# CHARLESTON.

STATE *ex rel* IMPERIAL COLLIERY COMPANY *v.* C. M. WHITT
*et al.*

(No. 4984)

Submitted May 22, 1924.     Decided October 6, 1925.

APPEAL AND ERROR—*Stay Bond Given by Defendant in Unlawful Entry and Detainer Held to Cover all Damages, Special or Otherwise, Sustained by Plaintiff as Direct and Proximate Result of Suspension.*

A stay bond given, under Section 4 of Chapter 135, Code, by the defendant in an action of unlawful entry and detainer, conditioned to pay all such damages as any person may sustain by reason of said suspension in case a supersedeas to such judgment shall not be allowed and be effectual within the suspension period, covers all damages, special or otherwise, sustained by the plaintiff as the direct and proximate result of the suspension.

(Appeal and Error, 4 C. J. § 3413).

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by the State, on the relation of the Imperial Colliery Company, against C. M. Whitt and others. Dissatisfied with the judgment rendered in its favor, plaintiff brings error.

*Reversed and remanded.*

*Brown, Jackson & Knight, Harold A. Ritz,* and *Thomas B. Jackson,* for plaintiff in error.

*George P. Stewart, Harold W. Houston, Charles J. Van Fleet,* and *C. M. Whitt,* for defendants in error.

LITZ, JUDGE:

The plaintiff, a coal mining corporation, recovered judgment in the Circuit Court of Kanawha County, July 15, 1922, against J. R. Harris for the possession of a dwelling house previously occupied by him as an employee of the company; this house being one of 167 dwelling houses constructed and used by the defendant as part of its mining plant in Kanawha County, to shelter its employees. The action had been brought when Harris quit work and joined his fellow workmen in a strike. For the purpose of staying the judgment for sixty days, pending an application to this Court for writ of error and supersedeas, the defendants, C. M. Whitt and U. G. Young, executed a bond, in accordance with section 4, chapter 135, Code, as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"That we, C. M. Whitt, responsible person for J. R. Harris, principal, and U. G. Young, surety, are held and firmly bound unto the State of West Virginia, in the just and full sum of Two Hundred and Fifty Dollars ($250.00) to the payment whereof, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly, severally and firmly, by these presents, sealed with our seals and dated this 31st day of July, 1922.

"The condition of the above obligation is such, That, Whereas, J. R. Harris, desire to present a

petition to the Supreme Court of Appeals of the State of West Virginia, for a supersedeas and writ of error to a judgment of the Circuit Court of Kanawha County, rendered on the 15th day of July, 1922, wherein Imperial Colliery Company was plaintiff and J. R. Harris was defendant.

''And the said Circuit Court has made an order suspending said judgment for the space of sixty days, when the said J. R. Harris shall give bond before the clerk of said court, in the penalty of $250.00, conditioned as provided by law in such cases.

''Now, therefore, if the said J. R. Harris shall well and truly pay all such damages as any person may sustain by reason of said suspension in case a supersedeas to such judgment shall not be allowed and be effectual within the above specified time, then this obligation to be void; else to remain in full force.

''C. M. WHITT,          (Seal)
Responsible person for
J. R. HARRIS,          (Seal)
U. G. YOUNG,          (Seal)

''Signed, sealed and acknowledged before and approved by me this 31st day of July, 1922.

''W. L. PRICE,
Clerk Kanawha Circuit Court.''

The condition of the bond having been broken, this action of debt was instituted thereon for the recovery of the rental, and special damages for loss of profits due to the retention of the house by Harris, during the period of suspension. The trial court refused to admit evidence for the purpose of establishing the plaintiff's claim for special damages, holding that the recovery was limited to the agreed rental of $5.00 per month.

In support of the claim for special damages, the plaintiff offered to show: that the houses were kept and maintained as incident to its coal mining business, being rented only to its employees who paid rent for such time as their actual occupancy continued, which amounted to less than the necessary upkeep; that if Harris had surrendered possession of the

house July 15, 1922, the company "could have put another man in his place in the house", but could not get another man to take his place in the mine as long as he stayed in the house; that the average miner of the company "could have produced" 13.5 tons of coal per day from July 15 to September 13, 1922; that the company operated its mines for 15 days during July, at a net profit of 13c per ton, 24 days during August, at a net profit of 94c per net ton, and 4 days between the 1st and 13th of September, at a profit of 23c per net ton; that during the months of July, August and September the plaintiff was furnished all the railroad cars it wanted, and could have sold a large tonnage in excess of the amount it actually mined during those months at prices netting the company $4.75 per ton; that it held contracts for large tonnages of coal at attractive prices during the period in question, but was unable to fill them, owing to the strike among its employees and the concerted action of various of its former employees, including Harris, to retain possession of the houses; that there were nineteen actions brought by plaintiff to recover possession of houses held by former employees and that the defendants in these actions remained in the houses after judgments were rendered against them, being advised and counselled by the local of the United Mine Workers of America at the plaintiff's operation that unless they remained in the houses strike benefits to them and their families would cease; that the plaintiff's actual loss resulting from Harris retaining possession of the house during the suspension of the judgment was $353.30; and that no rental was paid by Harris while the bond was in effect.

We are of opinion that the Circuit Court committed error in restricting the right of recovery to the sum of $5.00 per month during the suspension of the judgment, the nominal rental to be paid by Harris while he continued in the actual service of plaintiff. This ruling is wholly inconsistent with the amount and condition of the bond given in accordance with statutory requirement. If the bond were to cover only the rent which would accrue during the period of suspension its penalty need not have exceeded $10.00. The bond should be given the force of its language, "to pay all such damages

as any person may sustain by reason of said suspension in case a supersedeas to such judgment shall not be allowed and be effectual within the above specified time".

In the case of *Bemiss et al.* v. *Commonwealth,* 113 Va. 489, it was held that a supersedeas bond given under a statute declaring that the condition of every supersedeas bond shall be for the payment of all damages, costs and fees, and all actual damages incurred in consequence of the supersedeas, where the judgment or decree appealed from is affirmed, is broad enough to cover the depreciation in the value of State bonds between the date when they were directed to be delivered by the decree appealed from and the date of their actual delivery upon the affirmance of said decree by the appellate court, together with the difference between the interest (less taxes) the appellee could have made on the money and that actually received on the bonds. In the opinion of the case it is said:

> "It is also claimed, on behalf of the plaintiffs in error, that the judgment of the law and equity court was erroneous in allowing the sum of $697.50 on account of depreciation in the value of the bonds between the date of the decree, which was the 17th day of March, 1910, and the 11th day of March, 1911, when they were actually delivered to the defendants in error. The contention of plaintiffs in error rests upon the proposition that, in as much as it appears that the Century bonds were delivered to the defendants in error in kind, and it does not appear that they have ever been sold, they have received what the decree in the case of *Commercial Trust Company* v. *First National Bank* gave them, and that no loss upon this account has been sustained.
>
> "In this view we cannot concur. When the decree of March, 1910, was rendered, which was subsequently affirmed, the bank was entitled to the immediate possession of the Century bonds, to do with as to it seemed best. They were worth at that date, in the market, a certain sum. Possession of them was wrongfully withheld from the bank for about a year, and when the bank actually received them they had depreciated to the

amount for which the court gave judgment. The bank, in March, 1911, received what had diminished in value $697.50, as compared with what it was entitled to receive in March, 1910. We think it comes plainly within the condition of the bond.''

It is also held in *Cahall* v. *Citizens Mutual Building Association*, 74 Ala. 539, that a bond, given on appeal from a judgment for recovery of land or the possession thereof and conditioned for the payment of ''all costs and such damages as the plaintiff may sustain by reason of the appeal'', covers all damages resulting to the plaintiff from the appeal and its legal consequences and incidents; that is, all damages of which the appeal is the moving cause or the direct, immediate agency producing them; and that this includes the value of the use and occupancy of the premises pending the appeal, of which the plaintiff was deprived by the suspension of a writ of possession on the judgment. Referring to the condition of the bond, the opinion states, ''These words contemplate security and indemnity to the plaintiff against all damages resulting to him from the appeal and its legal consequences and incidents; all damages of which the appeal is the moving cause,—the direct, immediate agency producing them''.

*Upton* v. *Swedish American Hospital et al.*, 157 Ill. 126, was a suit on an appeal bond given in an action of forcible entry and detainer, conditioned to ''pay all rent now due and that may become due before the final judgment of said suit, and all damages and losses which the plaintiff may sustain by reason of the withholding possession of the premises, and by reason of any injury done thereto during such withholding''. Declaring that the plaintiff in such case was entitled to an award for the use of the premises according to the highest and best purpose for which they could have been used, in the opinion of the court it is said:' ''Unlawfully withholding possession was a tortius act. For all such acts the law demands full compensation. As applied to a case of this character such full compensation justifies an award for the use of the premises so detained according to

the highest and best purposes for which they could have been used''.

In *Lambert* v. *Haskell,* 80 Cal. 618, 22 Pac. 327, brought against the sureties on a preliminary injunction bond to recover damages sustained by the plaintiff as a result of being wrongfully restrained from carrying on his business by the injunction, holding that loss of profits might be recovered, the court said:

> ''It is objected that the respondent was allowed to recover damages for the profits which he would have made had he not been prevented by the injunction from carrying on his business. We think that this was proper. It must be true that where a party is wrongfully prevented by injunction from carrying on a profitable and established business, he can recover damages therefor. And if the profits which he would have made are not to be allowed, what damages is he to recover? Would it be adequate compensation to reimburse him merely for his expenditures, and for the losses which he might sustain from being prevented from fulfilling existing engagements, and the depreciation of his stock in trade? If this were true, there would be a very convenient way of getting rid of a business rival. A business might be destroyed by a preliminary injunction before the truth of the allegations upon which it was obtained could be inquired into. The best considered cases agree that where an established business is wrongfully injured or destroyed, the owner of the business can recover the damages sustained thereby, and that upon this question evidence of the profits which he was actually making is admissible.''

Counsel for defendants point out in detail alleged incompleteness of the proffered evidence as a basis for special damages, and these criticisms in many particulars are well founded. The trial court, however, having refused to admit evidence upon the issue, plaintiff should be afforded an opportunity by a new trial fully to develop his case. *Lewis* v. *Flour & Feed Company,* 96 W. Va. 694, 699, 123 S. E. 801.

The judgment of the Circuit Court will therefore be re-

versed, the verdict. of the jury set aside, and a new trial awarded the plaintiff.

*Reversed and remanded.*