# CHARLESTON.

. Submitted January 15, 1894.—Decided March 19, 1894.

STATE *ex rel.* MUNDY *v.* ANDREWS *et al.*

1. EVIDENCE—DECLARATIONS—RES GESTÆ.
   The declarations made by the grantor in a deed of trust which is in evidence, made at the time of its execution, are always admissible in evidence as part of the *res gestæ*.

2. EVIDENCE—DAMAGES.
   Where a party is engaged in the performance of a contract on a railroad, using his teams and utensils in removing dirt at so much per cubic yard, and his teams and utensils are seized and sold un-

der an attachment wrongfully sued out against him, and the profit he is able to realize by the performance of his contract is easily and certainly ascertainable, and he is prevented from such performance by such seizure and sale, the profit he is thus prevented from realizing is an element of damage, and it is error to exclude evidence with reference thereto from the jury.

CAMPBELL & HOLT for plaintiff in error cited 91 Ind. 311 ; 85 Ill. 88 ; 80 Ky. 403 ; And. Dict. Law 888; 7 Hill 61; 1 Suth. Dam. § 64 ; 8 W. Va. 568 ; 24 W. Va. 554 ; 22 Kans. 374 ; 2 Suth. Dam. § 513.

MARCUM & PEYTON and SIMMS & ENSLOW for defendants in error.

I.—*As to admissibility of parol evidence.*—13 Gratt. 705 ; 7 W. Va. 636 ; 7 W. Va. 289 ; 16 W. Va. 651.

II.—*Rule as to damages.*—Drake Attach. § 179 ; 37 Ark. 614 ; Sedg. Meas. Dam. 112, 115 ; 17 Gratt. 124.

III.—*As to setting aside verdict.*—33 W. Va. 40 ; 33 W. Va. 72.

IV.—*On instructions.*—Drake Attach. § 166 ; 13 Gratt. 139 ; 7 La. 231.

V.—*As to right of action.*—14 W. Va. 22; 46 Tex. 26; Big. Estop. 476–484 ; 37 Conn. 148; 81 Ill. 541; 85 Ill. .96 ; Code, c. 103, s. 3.

ENGLISH, JUDGE :

This was an action of debt upon an attachment-bond brought in the Circuit Court of Wayne county in the name of the State of West Virginia, which sued at the relation and for the use of C. D. Mundy, against W. W. Andrews, Isaac Bates, Chapman Fry and B. J. Prichard. The defendants demurred to the declaration, which demurrer was overruled, and thereupon the defendants pleaded conditions performed and conditions not broken and *non damnificatus*, which pleas were replied to generally. The case was submitted to a jury, who found a verdict for the defendants.

The facts which gave rise to said action were as follows : On the 16th day of January, 1891, W. W. Andrews and Isaac Bates, Jr., doing business under the firm name of Andrews, Bates & Co., ·brought an action of *assumpsit* against J. A. Mundy, Jr., and C. D. Mundy, partners, doing

business as J. A. Mundy, Jr. & Co., in the Circuit Court of Wayne county, and sued out an order of attachment against the estate of said defendants sufficient to pay two thousand six hundred and twenty three dollars and seventy four cents and costs of suit, on the ground that said defendants were non-residents of the State of West Virginia. The defendants filed a plea in abatement to said attachment, and a trial thereon was had before a jury, which resulted in a verdict in favor of the defendants, and the Circuit Court entered a judgment thereon abating said order of attachment. From this judgment an appeal was taken to this Court, which resulted in an affirmance of the same. The bond given to authorize the taking possession of the property in said attachment proceeding being defective, the plaintiffs were allowed to give a new bond under the statute with Chapman Fry and B. J. Prichard as sureties, and upon this new attachment-bond said C. D. Mundy claiming to be the owner of the property attached and sold brought the action of debt first above mentioned.

On the trial of said last-named action the plaintiffs introduced the records in said action of *assumpsit* with the mandate of this Court affirming the judgment abating said attachment together with the order directing the sale of the attached property pending the writ of error, which property consists of mules and wagons and harness, with proof of the ownership of the property attached and of damages claimed by reason of the seizure and sale of the property. Among other things, the plaintiff offered to prove that at the time his property was attached and seized, he was engaged under contract in a very profitable piece of scraper work, estimated to contain twenty thousand cubic yards, and that but for the seizure of his property he would have earned large profits therefrom; but the court excluded such evidence from the jury. The defendants sought to prove that the estate so attached and sold belonged to J. A. Mundy, Jr., and the said C. D. Mundy, jointly, and not to the said C. D. Mundy alone, and for this purpose they introduced a trust-deed given after the institution of said attachment suit to certain of their creditors in Catlettsburg, Ky., which purported to have been executed in the name of

J. A. Mundy, Jr. & Co., and the plaintiff offered to show that C. D. Mundy had nothing to do with the preparation of said trust-deed, and that, when the same was presented to him in that form for execution, he refused to execute it, because neither J. A. Mundy, Jr., nor the firm of Mundy & Co., had anything to do with the property, but that it was his individually and the trust-deed should be executed in his own name, and that not until considerable parleying did he give his assent to execute it in this form; but the court refused to allow these facts to be proved, and the plaintiff excepted.

Thereupon the defendants moved the court to give to the jury the following instructions.:

"The court instructs the jury that if they believe from the evidence that the property levied on by the sheriff of the county under the attachment issued in the case of Andrews, Bates & Co., against J. A. Mundy, Jr. & Co., was the property of J. A. Mundy, Jr. & Co., then the jury can not assess any damages in the case for the plaintiff, for the said levy and for the sale of said property under said attachment.

"The court instructs the jury that if they believe from the evidence in this case that J. A. Mundy, Jr., and the plaintiff, C. D. Mundy, were partners operating and doing business together under the firm name of J. A. Mundy, Jr. & Co., and that said J. A. Mundy, Jr., and the said C. D. Mundy were brothers, and, as such partners, they were largely indebted, and insolvent, at the time of suing out of the attachment by Andrews, Bates & Co. against them, then the jury are required to scrutinize carefully any and all transactions between them in relation to the disposition of the partnership effects by them, and especially should the jury carefully weigh and consider all dealings between the said Mundys in relation to the partnership property in so far as such dealings and transactions seek or tend to place such property beyond the reach of the creditors of said firm."

To the giving of said instructions, and each of them, the plaintiff objected, which objections were overruled by the court; and thereupon the court gave said instructions to

the jury as above set out. The case was submitted to the jury, and a verdict was rendered for the defendants. A motion was made to set aside the verdict and grant the plaintiff a new trial, which motion was overruled, and a judgment rendered for the defendants, and from this judgment this writ of error was obtained.

The first error assigned is that the court erred in refusing to allow the plaintiff to prove his objection and protest to executing the trust-deed aforesaid in the form presented in order to rebut the inference as to the joint ownership of the property conveyed. Did the court err in excluding this testimony? The deed of trust which was executed after the levy of the attachment as above stated was signed: "J. A. Mundy, Jr. & Co. [L. S.]. C. D. Mundy, [L. S.]. J. A. Mundy, Jr. [L. S.]. By C. D. Mundy [L. S.]." This deed of trust was executed after the alleged sale to C. D. Mundy of the property levied upon, and included said property. This deed of trust was offered in evidence by the defendant with the view of showing that, subsequent to the time of the levy of said attachment and previous to the institution of this suit the property levied upon had been granted and conveyed to a trustee by J. A. Mundy, Jr. & Co. In support of the effort the defence was making to show that the property levied upon was the property of J. A. Mundy, Jr. & Co., and not the property of the plaintiff, C. D. Mundy, and in order to rebut the presumption or inference that the jury might draw from that fact, the plaintiff sought to show that the said trust-deed was prepared and presented to him for execution in that form, and that he objected to signing and executing it, because the partnership did not own the property, and insisted on executing it in his own name, because the property belonged to him alone, and that he did not sign it until after considerable persuasion and argument.

The plaintiff wished to show this fact, not with a view of adding to or in any manner detracting from the effect of the deed, but merely for the purpose of showing, what he claimed at the time the deed was executed as a part of the *res gestæ.* He sought to show his declarations accompanying the act, and this, we think, he should have been allowed to do.

In the case of *Keeney* v. *Phillipy*, 91 Ind. 511, it was held that "the statements of the grantor in a deed which is in evidence, made at the time of its execution, are always admissible in evidence, as part of the *res gestæ.*"

So, also, in the case of *Bushnell* v. *Wood*, 85 Ill. 88, it was held that declarations made by the mortgager at the time of executing a chattel mortgage are a part of the *res gestæ*, and admissible in evidence.

The law is stated in the case of *McLeod* v. *Ginther's Adm'r*, as follows, in 80 Ky. 403 : " The general rule is that all declarations made at the same time the main fact under consideration takes place, and which are so connected with it as to illustrate its character, are admissible as original evidence, being what is termed a part of the *res gestæ ;* in other words, a part of the thing done."

So, also, in our state in the case of *Lawrence* v. *Du Bois*, 16 W. Va. 443, sixth point of syllabus, it was held that "the declaration of an agent, made while he is performing the act authorized by the principal, which qualify and characterize the act, are admissible in evidence against the principal as part of the *res gestæ ;*" and, in p't 4 of the syllabus in the same case, that "a deed absolute on its face, if shown to have been originally a mortgage, by parol proof and the surrounding circumstances, may be declared a mortgage," *etc.*

This ruling of the court was manifestly prejudicial to the plaintiff in error, for the reason that if the property levied upon under the attachment belonged to the firm, and not to C. D. Mundy, then C. D. Mundy could not sustain, the action in his individual name.

The next assignment of error relied upon is that the court erred to the prejudice of the plaintiff in error by excluding from the jury the proof offered as to the profits secured by contract, and which would have been earned, had the property not been seized, by carrying on the scraper work at which he was engaged. The question raised by this assignment is as to what may be taken into consideration in estimating the damage sustained by the plaintiff. This question was passed upon in this Court in the case of *Hare* v. *Parkersburg*, 24 W. Va. 554. The syllabus in that case reads as follows :

"In a suit for a breach of contract, the damages should not be based on a conjectural estimate of the profits which might have been made out of the contract, but, if the contract is for the delivery of a certain quantity of gravel, the jury may legitimately ascertain the damage sustained by a breach of contract, whereby the plaintiff was prevented from delivering the gravel by an improper cancellation of the contract by the defendant, by subtracting from the price to be paid for the gravel when delivered the cost to the defendant of delivering this quantity of gravel; and, in determining this, the jury may properly consider what had been the actual cost of delivering a like quantity of gravel by the defendant to the plaintiff."

Now, the testimony in this case discloses the fact that the plaintiff in error had sixteen mule-teams engaged in the work of removing dirt at sixteen and one fifth cents per cubic yard. It had been ascertained by actual experiment how much each team could remove per day, the costs of feed and driver had also been ascertained in like manner, and, deducting these costs, it is found that each team was earning six dollars and sixty six cents per day, and the sixteen teams, in the aggregate, one hundred and six dollars and fifty six cents per day. This amount the plaintiff was realizing under his contract each day, and, while the contract was not actually rescinded, yet the mules and harness and scrapers were seized and taken from him, and he was thus deprived of the entire benefit of his contract, and the result was precisely as if it had been rescinded. By subtracting the cost of removing a cubic yard of dirt from the amount he was to receive for removing the same, as was done with reference to the gravel in the case of *Hare* v. *Parkersburg, supra,* the damage can be easily and properly ascertained.

Now in the case under consideration the rule for ascertaining the damages to which the plaintiff was entitled, is precisely the same as if the plaintiff was prevented from enjoying the benefits of his contract by reason of the fact that the party, with whom he contracted, refused without cause to allow him to proceed with the work in accordance with the terms of his contract; and the rule in ascertaining

such damages is laid down by this Court in the case of *James* v. *Adams*, 8 W. Va. 569, ninth point of syllabus, as follows :

"The general rule seems to be that the party injured by a breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain, and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits, therefore, which the law excludes, not such as, being the immediate and necessary result of the breach of contract, may be fairly supposed to have entered into the contemplation of the parties when they made it, and are capable of being definitely ascertained by reference to established market rates, or other like definite criteria, according to the case,"—citing *Griffin* v. *Colver*, 16 N. Y. 489.

In 2 Greenl. Ev. (15th Ed.) p. 262, note b, it is said : "The rule has not been uniform or very clearly settled as to the right of a party to claim a loss of profits as a part of the damages for breach of a special contract. But we think there is a distinction by which all questions of this sort can be easily tested. If the profits are such as would have accrued and grown out of the contract itself, as the direct and immediate results of its fulfillment, then they would form a just and proper item of damages to be recovered against the delinquent party upon a breach of the agreement," *etc.*—referring to numerous authorities and among others citing 7 Hill (N. Y.) 61, where it is held, in the case of *Masterton* v. *Brooklyn*, that, "where one party to an executory contract puts an end to it by refusing to fulfill, the other party is entitled to an equivalent in damages for the gains or profits which he would have realized from performance."

In 2 Suth. Dam. (2d Ed.) § 512, the author says, in speaking of damages recoverable under attachment-bonds : "In the absence of statutes authorizing the recovery of exemplary damages, the obligor and his sureties are not liable for anything beyond such actual damages as are the direct result of the attachment. The question of malice is not an issue. If an attachment has been obtained without just cause, the terms of the bond secure to the defendant all

costs and damages that he has sustained in consequence thereof. The condition is satisfied, and its terms substantially complied with, by awarding him damages adequate to the injury to the property attached, and the loss arising from the deprivation of its use, together with the costs and expenses incurred. * * * The actual damages have generally been stated to be the injury to the plaintiff by being deprived of the use of his property, or its loss, destruction, or deterioration, together with the costs and expenses incurred by him in the defence of the suit. * * * The expense which the owner of horses incurs by hiring others to do the work of those taken from him in order that he may perform a contract previously entered into may be recovered, and the recovery may be for such sum as the use of the property was worth to him, though that is in exess of the market value,"—citing *State* v. *McKeon*, 25 Mo. App. 667.

In the second point of the syllabus in that case it is held that "counsel fees and other expenses incurred in obtaining a dissolution of an attachment, together with the value of the use of the attached property during its detention, where such property, consisting of work, animals, and utensils, is restored to the defendant, may be recovered in an action on the bond."

In that case Thompson, Judge, delivering the opinion of the court, said: "The next assignment of error is that the court erred in admitting evidence in behalf of the plaintiff as to the value of the services of the animals taken by the sheriff under the writ of attachment during the time they were in the possession of the officer, and also in instructing the jury as to the measure of damages in suits on attachment-bonds, as set forth in the following instruction, given at the request of the plaintiff: 'The jury are instructed that the defendants are liable for all costs the relator, John W. Burton, incurred in defending the attachment suit brought by Thomas W. McKeon against him, including all costs of his own attendance, and such reasonable attorney's fees in defending said attachment, and, also, for all damages occasioned to him by loss of time, and all delays and expenses, the direct result of said attachment.'—

The evidence objected to was evidence to the effect that, at the time of the seizure of the property under the attachment, which property consisted of nine head of mules and horses and four or five wagons, shown by the testimony to be what was called four teams and a half—that is, four double teams and one single team—the defendant in the attachment was engaged with his teams in the performance of certain contracts for the building of levees, and was obliged, in order to perform his contracts, to hire other teams to take the place of those seized by the sheriff, at an expense of three dollars and fifty cents per day for each full team. * * * The inquiry thus is whether the expense to which the defendant in the attachment suit was put by reason of having to hire other animals to replace those which were seized under the writ is to be regarded as natural and proximate damages resulting from the suing out of the attachment. We are of opinion that it is to be so regarded."

In the case at bar the plaintiff in error had a contract, the value of which, while in possession of his teams and utensils, was easily ascertainable. With them he had the ability to remove so many cubic yards of dirt each day, and the value of the work was fixed by his contract; without them, he was unable, so far as appears from the record, to proceed with his contract. The loss of the profit which he could have made by the use of his teams and harness and utensils, was the direct result of the seizure of said property under said attachment. The condition of the attachment-bond provided that the plaintiffs in the attachment should well and truly pay all costs and damages, which might be awarded against them or either of them or be sustained by any person by reason of the suing out of the said attachment, and should pay to any claimant of any property seized or sold under or by virtue of said attachment all damages, which he might recover in consequence of such seizure or sale; and, in looking for the damage sustained by the plaintiff in error by reason of the seizure and sale of the said property under the attachment, the fact that the profitable undertaking, in which the plaintiff in error was engaged, was brought to an end, and he was deprived of all

the benefits secured to him by his contract, at once challenges our attention, and must be considered and regarded as one of the principal elements of damage.

Our conclusion is that the court erred in excluding from the jury the evidence offered as to the profits secured by said contract. As to loss occasioned by seizure of property under attachment, see *Hoge* v. *Norton*, 22 Kan. 374, in which it appeared that a herd of cattle was wrongfully seized under attachment, and placed on an inferior range, and it was held that the gain prevented by the remnant of the cattle could be shown and considered as an element of damage.

As to the first instruction asked for and given at the instance of the defendants, over the objection of the plaintiff, in which the court instructed the jury that, "if they believed from the evidence that the property levied upon by the sheriff under the attachment issued in the case of Andrews, Bates & Co. against J. A. Mundy, Jr. & Co. was the property of J. A. Mundy, Jr. & Co., then the jury can not assess any damages in the case for the plaintiff for the said levy, and for the sale of said property under said attachment"—we think it was not proper, in view of the fact that the court had excluded the testimony offered by the plaintiff as to his declarations and remonstrances as part of the *res gestæ* at the time said deed of trust was executed, and the testimony of C. D. Mundy shows that he was a sub-contractor under Mason, Hoge & Co., and he was recognized as the contractor by the engineers on the work in Logan county; that his brother was at one time interested in the work in Logan county, but not at the time this attachment was levied in the work in Wayne county. It appears that the mules were purchased by C. D. Mundy from his brother; that the contracts, both in Logan and Wayne, were made by C. D. Mundy; and, whether the purchase of the mules was fraudulent or not as to creditors, it was good and valid as between the parties, and I see no good reason why C. D. Mundy could not sustain the action; and for these reasons the first instruction should have been rejected.

As to the second instruction it also should have been re-

jected, for the reason that the transfer of property between the Mundy brothers was not prejudicial to the rights of the creditors of J. A. Mundy, Jr. & Co. It was as much liable in the hands of C. D. Mundy as it was before the transfer, and, as the dealings between them had no tendency to put the property beyond the reach of the creditors of the firm, there was no evidence in the cause to justify the instruction, or on which it could be properly predicated, and the instruction would have a tendency to mislead the jury.

For these reasons, my conclusion is that the judgment complained of must be reversed, the verdict set aside, a new trial awarded, and the case remanded, at the costs of the defendants in error.