# CHARLESTON.

WALTER H. LEWIS *v.* WELCH WHOLESALE FLOUR & FEED CO. *et al.*

Submitted May 29, 1924.    Decided July 1, 1924.

LANDLORD AND TENANT—*Measure of Damages for Unlawfully Withholding Leased Premises Stated.*

> Where possession of leased premises is unlawfully withheld, damages are recoverable against the party unlawfully withholding the same, which may fairly and reasonably be considered as the natural and proximate result thereof, and which damages, special or otherwise, the party in default, in the light of the circumstances, should reasonably have known would result to the party entitled to possession, from his acts in withholding the premises.

MILLER, JUDGE, absent.

Error to Circuit Court, McDowell County.

Action by Walter H. Lewis against the Welch Wholesale Flour & Feed Company and others. Judgment for defendants, and plaintiff brings error.

*Reversed; verdict set aside; new trial awarded.*

*Strother, Sale, Curd & Tucker,* for plaintiff in error.

*Harman & Howard,* for defendants in error.

LIVELY, JUDGE:

The only point involved in this writ is the proper measure of damages for retention of real estate wrongfully held by defendant from occupation by plaintiff from April 1, 1921, to July 1, 1922.

On February 25, 1920, Brewster, the owner of the property and then president and principal owner of the Welch Wholesale Flour and Feed Company, defendant, by written deed of lease, leased the property involved in this suit, and another building adjoining it on the same lot, to plaintiff Lewis, for the term of ten years beginning on April 1, 1920, the stipulated rent for the entire property being $625. per month. It was agreed, however, that Lewis should have a reduction of $100 per month until such time as the Flour and Feed company, then occupying the first floor of the one-story brick building (the occupancy of which one-story brick building is the subject of controversy) should vacate, no definite time being fixed for the surrender of the possession of the one-story brick building by the Flour and Feed company. Plaintiff did not get possession of the one-story brick building and has paid to his landlord the sum of $525 per month, having taken possession of the other property leased and not here involved. The entire property was rented for the purpose of conducting an extensive wholesale and retail furniture business therein, and plaintiff needed the one-story brick building for storage and other purposes in connection with the business. In January, 1921, Brewster sold the Flour and Feed company to defendant Swope, who was approached by plaintiff with the request that the one-story brick be vacated and surrendered. Swope refused to vacate, relying upon the clause in the lease from Brewster to plaintiff which stated that no definite time had been fixed for its surrender; thereupon Lewis served a written notice upon Swope and defendant Flour and Feed company to vacate by April

1, 1921. Upon failure to vacate at that date, a suit for unlawful detainer was instituted by plaintiff, resulting in a verdict for defendant. That suit was brought to this court on writ of error where it was decided that the time of occupancy by defendant Flour and Feed company, provided for in the lease, was a reasonable time, and that defendant, having occupied the premises for one year, such occupancy for such time fulfilled the meaning and intent of the agreement and that the peremptory instruction to find for plaintiff should have been given. *Lewis* v. *Welch Flour & Feed Co.,* 90 W. Va. 471; 111 S. E. 158. The case was remanded and retried, and judgment rendered by the circuit court in favor of Lewis for possession of the property, the Flour and Feed company to vacate by August 1, 1922. It did vacate on July 1st that year. The judgment for possession reserved to plaintiff the right to institute any proper action to recover damages for the unlawful detention which plaintiff might see fit to institute. It will be observed that it had been judicially determined that defendant had unlawfully occupied the one-story brick building from the 1st day of April, 1921, to July 1, 1922, a period of fifteen months. This action was promptly instituted in assumpsit for damages for detention of the property for that period.

Plaintiff in his declaration as amended alleges the rental value of the property during that time to be $3,750; also for damages which resulted from being compelled to store his furniture in a damp basement $500; for rental of other space in which to store his goods $500; and for loss of profits to his business, which he charges to be $500. Upon the trial the court limited the damages to the rental value of the property alone; and refused to allow evidence of the special damages charged in the declaration to go to the jury. Plaintiff offered evidence to show that he had paid $254.98 for rent of other premises in which to store a portion of his goods; that he had paid out for repairs of furniture damaged by dampness of the basement in which he stored a portion of his goods, to the amount of $409.50; and that by reason of the damage thus occasioned, although attempted to be repaired, the goods so damaged and repaired were sold at a price less

than their market value, the difference between the market value and the price received being $650.37. This evidence was excluded from the jury over plaintiff's exceptions; and the issue was limited to the actual market rental value of the property for the fifteen months period. Under instructions from the court the jury found that the rental value of the property was not in excess of $100 per month; therefore plaintiff had not been damaged by retention of the property, and the verdict was for defendant.

Was it error to exclude the evidence, above set out, of the rental paid by plaintiff for other premises; and damages to the merchandise occasioned by dampness from storage in the cellar? Can such special damaes be recovered in addition to the rental value in excess of the rent agreed to be paid?

The measure of damages for failure to give possession of rented premises is ordinarily the difference between the rent reserved and the rental value of the property for the term; and if the actual rental value is not greater than the stipulated contract for rent, only nominal damages can be recovered for the detention. Such is the general rule. *Robrecht* v. *Marling,* 29 W. Va. 765. But it is quite well settled that where other damages have resulted as the necessary or natural consequence of the failure to deliver possession, such as the expense incurred by the party entitled to the premises in preparing to occupy the lease, they are also recoverable. 24 Cyc. p. 1053; *Robrecht* v. *Marling, supra;* Sutherland on Damages, sec. 865; *Gross* v. *Heckert,* 120 Wis. 314; *Cohn* v. *Norton,* 57 Conn. 480; *Hodges* v. *Fries &* Co., 34 Fla. 63; *Rose* v. *Wynn,* 42 Ark. 357; *Green* v. *Williams,* 45 Ill. 206; *Cilley* v. *Hawkins,* 48 Ill. 308. These cases also accentuate the principle that if both parties, at the time of making a rental contract, knew the purposes for which the premises were to be used, the special damages which resulted from a breach were in contemplation of the contract, entered into at its formation, and could be recovered therefor.

It is quite generally held that no recovery can be had for profits which might have been made, if the business or undertaking contemplated under the lease, had been carried on.

They are generally too speculative and remote and do not form a basis of damage. While the declaration sets up a claim for profits, no evidence was attempted to be introduced to sustain that claim, and of course, that item of damage is out of the case.

The evidence quite clearly shows that defendant knew the character of the business carried on by plaintiff, and that it was necessary for him to have space in which to store his furniture during the time the premises were held by defendant. He had demanded possession, verbally and by written notice. They were conducting their business on the same lot; next door business neighbors. The occupation of the building was of particular and special value to the plaintiff. Proper storage room could not be obtained in the town. Plaintiff says it was necessary for him to order his goods at stated intervals in order that the orders could be filled, and that sometimes it was from two to six months before he could receive his furniture in lots. It was necessary for him to have his stock on hand in order to make deliveries of sales made by sample. The withholding of the premises by defendant was tortious; it was a tenant at will, and its tenancy had been terminated by proper notice and demand. When Brewster demised the property to plaintiff for the term of ten years, the latter stood in relation of landlord to the defendant, and may maintain his action of assumpsit on the implied rental contract for such damages as resulted from the breach, and which were the direct and proximate result thereof. Knowing the plaintiff's business and his necessities, we think the items of special damage here set up could have reasonably been in contemplation of the parties while the premises were withheld. Damages which are the natural and proximiate result of the breach of any contract are generally recoverable. That rule, founded in reason, we think should apply in cases of this character. We think the evidence rejected was admissible on the question of the rental value of the property during the term. The inquiry was not so much as to what was the market value of the premises for ordinary purposes, but what was their value to the plaintiff for the purposes for which they were to be used. For a feed

and flour store, or for a grocery store or some business of that character the property may not have been worth as much as in connection with a large wholesale and retail furniture business. The character of this particular business as shown by plaintiff's evidence is quite different from an ordinary mercantile establishment. Large shipments of furniture must be made at one time, and storage room sufficient to accommodate the merchandise is necessary. Whether the items of special damage sued for would be recoverable if the value of the premises to plaintiff in connection with his business had been recovered, that is, whether a recovery for one would merge that of the other, is not necessary to be determined here.

Under the particular circumstances here shown, we are of the opinion that the amount paid for rent for other premises for the storage of goods, and for the damages to the same by reason of dampness in the cellar, if plaintiff was compelled to store his furniture there, are proper items to go to the jury to be considered by it as special damages. It is contended by defendant in error that plaintiff is not entitled to recover for these items of special damage, because he ordered his furniture knowing that he could not obtain possession of the premises sued for, and that he would be compelled to store the same in premises not suitable for storage. In other words, that he has not minimized his damages; that he incurred them knowingly, and therefore would be precluded from recovery. That is a proposition which does not arise here, because the trial court has held that no such special damages are recoverable in any event; that the only measures of damage is the difference between the agreed rental and the value of the leased premises for the period of time covered. It would be for the jury to determine, under proper instructions by the court, whether plaintiff had used proper care and foresight to minimize his damages.

The trial court erred in excluding plaintiff's evidence as to his special damages; and the judgment will be reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*