**AMERICAN SURETY CO. v. WHEELING STRUCTURAL STEEL CO.**

No. 4645.

Circuit Court of Appeals, Fourth Circuit.

Sept. 6, 1940.

Joseph R. Curl, of Wheeling, W. Va. (John C. Palmer, Jr., and Erskine, Palmer & Curl, all of Wheeling, W. Va., on the brief), for appellant and cross-appellee.

Albert W. Laas, of Wheeling, W. Va. (Wright Hugus and Schmidt, Hugus & Laas, all of Wheeling, W. Va., on the brief), for appellee and cross-appellant.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a suit instituted by the American Surety Company, hereafter referred to as the surety company, surety on a bond executed by the Detroit Steel Erection Company, hereafter referred to as the construction company, to the Wheeling Structural Steel Company, hereafter referred to as the steel company. The two companies last named, with Pike & Cook, Inc. and certain creditors of the construction company were made defendants in the suit, the purpose of which was to determine the liability of the surety company under the bond and, by way of subrogation, to recover of the steel company the balance due by that company under its contract with the construction company, together with damages claimed for breach of contract. The court below found that the surety company was liable to the steel company under the bond in suit in the sum of $10,527.47; that to this should be added the sum of $198.68, being the amount of premium on bond paid by the steel company for the construction company; and that the steel company was indebted to the surety company, as assignee of the construction company, in the sum of $2,451.97 for moneys retained under contract, plus the sum of $3,585.87 as damages for breach of or deviation from contract. Decree was accordingly entered that the steel company recover of the surety the sum of $4,690.31 with interest.

The surety company has appealed from this decree, contending that it is erroneous in so far as it adjudges that the steel company is entitled to recover anything under the bond. The steel company has appealed, contending that the decree is erroneous in so far as it allows recovery by the surety company of the $3,585.87 as damages for breach of or deviation from contract. It is conceded that the surety company is liable for and has paid under its bond claims of creditors of the construction company in the total sum of $4,239.81, and that by reason of such payment it is subrogated to the claim of the construction company for the balance of $2,451.97 retained under the contract by the steel company. No contention is made as to the right of the steel company to offset against this the sum of $198.68 paid by the steel company as premium on bond for the construction company. The case on appeal, therefore, is narrowed to the liability of the surety company for the $10,527.47 awarded the steel company and the liability of the steel company for the $3,585.47 awarded the surety company. We shall consider these separately.

*The Appeal of the Surety Company.*

In 1931 Pike & Cook, Inc., whom we shall refer to hereafter as the contractor, entered into a contract with the United States Government for the construction of a post office building in Louisville, Ky. and entered into bond in the usual form for proper performance of the contract and for payment of claims of laborers and materialmen. The contractor thereupon entered into a contract with the Wheeling Structural Steel Company, heretofore and hereafter referred to as the steel company, to furnish and erect the steel framework of the building. The steel company then entered into a contract with the Detroit Steel Erection Company, heretofore and hereafter referred to as the construction company, to erect the steel framework. The contract provided that the construction company should give bond "guaranteeing the faithful performance of this contract and the completion of said erection work and the payment of all bills for water, power, light and tools, and for the payment of wages of workmen to the general satisfaction of the United States Treasury Department, the General Contractor (Pike & Cook Company), as well as the Fabricator (the Wheeling Company), and indemnifying Fabricator against any loss it may suffer by reason of being required to pay a penalty or otherwise for delay in erection caused by Erector." The construction company, pursuant to this provision of the contract, on September 30, 1931, gave bond

to the steel company in the penal sum of $30,000 for the faithful performance of its contract, the condition thereof being in the following language: "The condition of this obligation is such, that if the principal shall faithfully perform the contract on his part, free and clear of all liens arising out of claims for labor and materials entering into the construction, and indemnify and save harmless the owner from all loss, cost or damage which he may suffer by reason of the failure so to do, then this obligation shall be void; otherwise to remain in full force and effect."

The bond contained the provision that no suit should be brought on it after the 2nd day of March 1932; but this limitation was later extended by agreement of the parties to May 2, 1932.

The steel work of the building was approved and accepted by the government on August 15, 1932. The steel company had retained under its contract with the construction company only the $2,451.97 above referred to. In the meantime claims against the construction company had been filed with the steel company and with the contractor in the sum of $10,527.47, although it appears that of this amount only $4,239.81 represented claims which were properly allowable as liens on funds under the contractor's bond. Nevertheless, the contractor, because of the filing of these claims, withheld the full sum of $10,527.47 in making settlement with the steel company. This suit was filed September 30, 1932, to determine the liability of the surety company with respect to these claims, the steel company, the construction company and the contractor being made parties to the suit, as well as the creditors of the construction company who had asserted claims. The contractor, who was represented by the same counsel as the steel company, filed answer admitting that it was retaining from the moneys due the steel company funds in the amount of the claims filed with it, and prayed the direction of the court as to the application of these funds. In 1933 the contractor became insolvent and in 1935 a receiver was appointed for it. In an amended answer filed November 6, 1935, the steel company alleged the insolvency of the contractor and its consequent loss of the funds withheld under its contract. It was this loss for which the court below allowed recovery on the bond of the construction company signed by the surety company, the recovery being allowed on the theory that the steel company had lost the amount of the funds withheld by the contractor as a result of the failure of the construction company to pay claims against it, the withholding of funds by the contractor on this account and the subsequent failure of the contractor so that the funds withheld could not be recovered.

■■■ We do not think that such an element of loss is recoverable under the bond as damages for breach of contract, for the reason that it was not an element of damage reasonably within the contemplation of the parties at the time of the execution of the bond. The bond was given to secure the performance of the contract and the payment of claims for labor and materials contracted by the construction company. The contract having been properly performed, the limit of recovery under the bond was the amount of the claims for labor and materials which the construction company had failed to pay. Loss arising from the insolvency of the contractor, and consequent failure of the contractor to pay the amount due by it to the steel company, was not a loss arising from the failure of the construction company to pay the claims against it, but a loss arising from an independent intervening cause, not reasonably within the contemplation of the parties at the time the bond was executed. In such case the rule properly applicable was that laid down by Baron Alderson in the leading case of Hadley v. Baxendale, 9 Exch. 345, as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special

circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

This is the classical statement of the rule applicable in case of damage arising out of breach of contract, now generally accepted here and in England. 15 Am.Jur. 451. That it correctly states the law in West Virginia, see Lewis v. Welch Wholesale Flour & Fuel Co., 96 W.Va. 694, 123 S.E. 801, 39 A.L.R. 383; State ex rel Mundy v. Andrews, 39 W.Va. 35, 19 S.E. 385, 45 Am.St.Rep. 884. And it is the law in Kentucky, the state where the contract was to be performed. Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, 12 S.W. 554, 13 S.W. 249, 7 L.R.A. 77, 25 Am.St.Rep. 536.

No case is cited in which recovery of such an element of loss has been allowed in a case of this character; and we know of none. Applying the principle of Hadley v. Baxendale, supra, it is clear that no recovery for such loss should be allowed. There is no evidence of any special circumstances known by or communicated to the parties at the time which would justify such recovery; and they can only be supposed to have had in contemplation "the amount which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract". In other words, for failure of the construction company to pay proper claims for labor and materials, it must have been contemplated that the surety would be liable for the amount of such claims, not for losses sustained by reason of the failure of the general contractor to make payments to the steel company. No one would contend that the construction company, because of failure to pay claims for labor and materials, was rendered liable to the steel company for loss resulting from the failure of the contractor. And certainly the surety is not liable where no liability could be asserted against the principal.

The steel company virtually admits that it could not recover on the bond for the reasons stated, if this were a suit which it had instituted for that purpose. It contends, however, that a distinction should be made by reason of the fact that this suit was instituted by the surety company for the purpose of settling all claims under the bond and because the contractor and the steel company were made parties for the purpose of determining rights as to the $10,527.47 withheld by the contractor. For this position it relies upon Sanders v. Frankfort etc. Ins. Co., 72 N.H. 485, 57 A. 655, 101 Am.St.Rep. 688; Patterson v. Adan, 119 Minn. 308, 138 N.W. 281, 48 L.R.A.,N.S., 184; and Elliott v. Aetna Life Ins. Co., 100 Neb. 833, 161 N.W. 579, L.R. A.1917C, 1061. These cases, however, are not in point. They hold merely that an insurance or indemnity company that undertakes, pursuant to provisions of a policy of employers' liability or automobile liability indemnity insurance, the defense of an action for damages against the insured is bound by the policy to pay the judgment rendered in the action, notwithstanding the insolvency of the insured. We need not consider the soundness of these decisions, since they have no bearing whatever on the question before us. The question here is whether the coverage of the bond is enlarged by reason of the fact that the surety has instituted the suit to have its liability under the bond determined. We do not think so, and we cannot see that joining the contractor as a party could possibly affect the matter.

Having reached this conclusion, we need not consider the other contentions made by the surety, viz., that claim for loss arising from the insolvency of the contractor was not brought into the suit within the time limited in the bond; that the steel company was guilty of negligence in asserting its claim against the contractor and is estopped by such negligence; and that, in proving claim in the Hurd Act suit in Louisville, Ky., the steel company released the surety on the contractor's bond from liability for its claim against the contractor, thereby releasing a security to which the surety here would have been subrogated if required to pay the claim. Interesting questions are presented by each of these contentions, but they become immaterial in view of our decision that the loss in question was not covered by the bond.

### The Appeal of the Steel Company.

The steel company contracted with the construction company to ship the steel "in sequence" so as to facilitate erection, and plans were worked out which set forth the sequence in which it was to be shipped. The steel was not shipped in sequence and

the special master has found that this increased the cost of the construction company in the sum of $3,585.87. The special master also found, however, that the construction company "acquiesced in this departure from the contract" but that the surety company did not acquiesce. The trial judge affirmed these findings, saying: "Both parties to the controversy agree that the steel was not shipped in sequence and it is equally clear that by reason thereof, Pike & Cook was delayed in its work and was put to additional expense in handling the materials, storing the materials which could not be used upon arrival, etc. It has filed as an exhibit an itemized statement of its loss and expense in this respect and the witness, Van Slyke, testified to the items therein contained. Wheeling Structural Steel Company admits that the materials were not shipped in sequence, but claims that this change in the method of shipment was made at the suggestion of Mr. Pentecost, President of Detroit Steel Erection Company. While the evidence is conflicting on this point, it clearly preponderates in favor of the contention of the Wheeling Structural Steel Company and were this litigation solely between the Wheeling Structural Steel Company and Detroit Steel Erection, this claim for damages would have to be refused. The American Surety Company, however, did not consent to this deviation from the contract * * *".

Upon these concurrent findings as to the facts, which we find no basis in the record to disturb, the lower court held that the surety company, as assignee of the construction company or by way of subrogation to its rights, was entitled to recover of the steel company the damages due to this deviation or departure from the contract. In this we think there was error. The rights of the surety company to recover of the steel company, whether as assignee of the rights of the construction company or by way of subrogation, could not rise above the rights of that company. Hartford Accident & Indemnity Co. v. Board of Education, 4 Cir., 15 F.2d 317; Hughes v. McDermitt 86 W.Va. 86, 102 S.E. 767; 4 Am.Jur. 304-305. It is not merely a question of an assignment by the construction company being subject to defenses against that company, but there is the more fundamental defect that there was nothing to assign. That company having acquiesced in a change in the contract respecting delivery, there was no breach of contract on the part of the steel company; and consequently there was no claim of damages to be assigned or for the surety company to be subrogated to.

The learned judge below evidently had in mind the rule that departure from the contract releases the surety, at least to the extent of the damage sustained as a result of the departure. See Fidelity & Casualty Co. v. Metal Window Products Co., 4 Cir., 30 F.2d 56; Southern Surety Co. v. Plott, 4 Cir., 28 F.2d 698; Pickens County v. National Surety Co., 4 Cir., 13 F.2d 758, 759. Here, however, the question is not one of releasing the surety from liability under his bond, but of permitting him to recover damages, by way of subrogation or assignment, on account of breach of contract. Since the contract has been performed as modified, there has been no breach. Consequently there can be no recovery of damages on account of breach, whatever may have been the effect of the modification of the contract on the undertaking of the surety.

For the reasons stated, the decree appealed from will be reversed on both appeals and the cause will be remanded for further proceedings in accordance herewith. The costs in this Court will be divided and the costs in the court below will be retaxed in such way as to cast upon each of the parties a just portion thereof in the light of the final decree. Certainly, the surety company should bear all of the cost properly attributable to the litigation of the claim for damages with respect to the shipment of the steel, and the steel company should bear all the cost properly attributable to the litigation of its claim of $10,527.47 under the bond.

Reversed.