**Robert Lee HARRELL, Plaintiff,**

**v.**

**A. PURCELL, in his official capacity and his individual capacity, M.H. Carrier, in his official capacity and his individual capacity, J.L. Ford, in his official capacity and his individual capacity, B.J. Barnes, Sheriff of Guilford County, in his official capacity,**

Guilford County, and Peerless Insurance Company, Member of Liberty Mutual Insurance Company, as Surety to Guilford County and Guilford County Sheriff's Department, Defendants.

No. 1:01–CV–00725.

United States District Court, M.D. North Carolina.

Dec. 19, 2002.

Thomas Keith Black, Forman Rossabi Black Marth Iddings & Slaughter, P.A., Greensboro, NC, for Plaintiff.

Mercedes O. Chut, Office of Guilford County Attorney, Greensboro, NC, Susan D. Moore, Office of Guilford County Attorney, Greensboro, NC, William L. Hill, Moss, Mason & Hill, Greensboro, NC, Matthew L. Mason, Moss Mason & Hill, Greensboro, NC, for Defendants.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiff Robert Lee Harrell, Jr. ("Plaintiff") brings this action alleging excessive force pursuant to 42 U.S.C. § 1983 and several state law claims against three members of the Guilford County Sheriff's Department in their individual and official capacities: Defendants A. Purcell ("Corporal Purcell"), M.H. Carrier ("Deputy Carrier"), and J.L. Ford ("Officer Ford"). Pursuant to the doctrine of supervisory liability, Plaintiff further alleges that Defendant B.J. Barnes ("Sheriff Barnes"), in his official capacity, and Defendant Guilford County ("Guilford County") are liable under section 1983 and the state law claims for the injuries he sustained from the officers' alleged use of excessive force. Lastly, Plaintiff alleges that Defendant Peerless Insurance Company ("Peerless"), as surety to Guilford County and the Guilford County Sheriff's Department, is also liable for his injuries.

The case is currently before the court on a summary judgment motion by Corporal Purcell, Deputy Carrier, Officer Ford, Sheriff Barnes, and Guilford County. The Peerless Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is also for disposition. Because Plaintiff has failed to establish that the officers violated his constitutional rights when they used force against him, the court must resolve this case as a matter of law in favor of the defendants. Summary judgment will be granted in favor of Defendant Purcell, Carrier, Ford, Barnes, and Guilford County. Defendant Peerless' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment will be granted as well.

## I. FACTUAL HISTORY

On June 25, 2000, Plaintiff, a 67–year-old man, was driving his pickup truck south on Interstate 85 when he collided with two other vehicles and failed to stop after each collision. Shortly after the first collision, North Carolina State Highway Patrol ("Highway Patrol") officers began a vehicular pursuit of Plaintiff in Alamance County, North Carolina. Approximately 15 minutes later, Plaintiff heard sirens, saw blue lights, and noticed a law enforcement vehicle directly behind him. (Pl.'s Dep. at 17, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.) Despite these tell-tale signs, Plaintiff failed to stop his truck because he "didn't know they were after [him]." (*Id.*) Highway Patrol troopers continued following Plaintiff for approximately 10 miles through two additional counties, Guilford and Randolph.

Because Plaintiff did not show any sign of surrendering, Highway Patrol radioed the Guilford County Sheriff's Department to request additional assistance in the pursuit. Corporal Purcell, Deputy Carrier, and Officer Ford responded to the call, which directed them to confine Plaintiff's truck to the far right lane of Interstate 85. With his blue lights, siren, and highway lights activated, Corporal Purcell accelerated in front of Plaintiff. Trooper Stallings drove in the middle lane on the left side of Plaintiff's truck. In order for Corporal Purcell to maintain his position in front of Plaintiff, he had to accelerate repeatedly to avoid being hit from behind by Plaintiff. For approximately two miles, Corporal Purcell and Trooper Stallings maintained their positions as they traveled at a constant speed of 60 miles per hour. Besides speeding up and occasionally swerving toward the left, Plaintiff's driving did not indicate to Corporal Purcell that Plaintiff was driving impaired. (Purcell Dep. at 93, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.)

After pursuing Plaintiff's truck for almost 12 miles without any signs of surrender, Deputy Ford was directed to place stop sticks on the highway to halt Plaintiff's truck. Although Plaintiff's front left tire was punctured and started to deflate, he still continued to drive. Trooper Stallings' vehicle also caught part of the stop sticks and he was forced to pull over. Deputy Ford joined the chase in Trooper Stallings' position adjacent to Plaintiff's truck.

At this point, with a deflated front left tire, Plaintiff was driving at approximately 40 to 45 miles per hour, and Corporal Purcell and Deputy Ford pursued him at the same speed. Deputy Ford discharged his weapon at Plaintiff's right front tire and was immediately admonished by Corporal Purcell. The record does not indicate that Plaintiff was aware that this shot had been fired. Deputy Ford attempted to stop Plaintiff by using the stop sticks but this attempt failed as well.

The Randolph County Sheriff's Department was notified of the pursuit after the second use of the stop sticks failed. Randolph County officers set up a roadblock by placing two marked patrol cars on the highway. Plaintiff showed no signs of slowing down or stopping as he approached the roadblock. The Randolph County officers were forced to move their vehicles in order to avoid being struck by Plaintiff.

After two failed stop stick attempts and a failed roadblock attempt, Deputy Carrier and Deputy Gunter entered the pursuit. Deputy Gunter deployed a third set of stop sticks that struck Plaintiff's remaining three tires. Plaintiff did not slow down or stop despite the fact that all four of his tires were deflated. Plaintiff concedes, however, that he probably realized the police officers were trying to stop his truck when they succeeded in flattening his tires, and he noticed "ten or twelve" patrol cars around him. (Pl.'s Dep. at 19, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.) Nevertheless, Plaintiff continued to drive on his wheel rims for at least one mile before his truck came to a stop on its own. (*Id.* at 23–24.)

Deputy Carrier parked his patrol car in front of Plaintiff's truck to prevent him from driving off. Corporal Purcell and Deputy Carrier then approached Plaintiff's truck with their guns drawn in the low ready position. Deputy Carrier shouted commands to Plaintiff to get out of the truck and to show his hands. Plaintiff did not respond to either of these commands.

Because of Plaintiff's non-response, repeated attempts to avoid stopping on the highway, and to use his truck as an assault weapon against the officers, Deputy Carrier opened the door to Plaintiff's truck and forcibly removed him. Because Deputy Carrier was unable to see Plaintiff's right arm as he approached the truck, he was unsure whether Plaintiff had a weapon inside the truck. Deputy Carrier used a standard escort hold and arm-bar technique to remove Plaintiff from the truck. Plaintiff was placed on his stomach on the side of the highway and Deputy Gunter handcuffed him. (Purcell Dep., Pl.'s Ex. 9.)

As Plaintiff rose from the ground, Deputy Carrier noticed blood coming from a small cut on Plaintiff's head. Plaintiff did not say anything to the officers at this time, nor at any time after his truck was stopped. Deputy Carrier did note, however, that Plaintiff's mannerisms were slightly odd and that he "was not acting right." (Carrier Dep. at 34, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.) The officers called Randolph County Emergency Medical Services ("EMS"), and Plaintiff was taken subsequently to the hospital for examination. Later, a nurse supervisor from High Point Regional Hospital notified Corporal Purcell that Plaintiff had suffered a dislocated shoulder.[1]

Plaintiff alleges that he was suffering from a temporary mental impairment at the time of the accidents, but the record does not substantiate this claim.[2] Plaintiff

---

1. Plaintiff contends that his arm started to hurt when the police officers twisted his arm around his back and placed handcuffs on him. (Pl.'s Dep. at 27–28, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.)

2. Plaintiff produced one medical document from High Point Regional Health Systems,

dated June 25, 2000, and signed by Dr. Leah Daggett. (Pl.'s Br. Opp'n Mot. Summ. J. Ex. A.) The document, entitled "Admission History and Physical Examination," states that Plaintiff was "unable to recall the details" of the pursuit, and he was *not* suffering from "fever or chills, nausea or vomiting, abdominal pain, chest pain, focal weakness, dysuria, seizure disorder, loss of bowel or bladder

is unable to recall the details of the accidents, the subsequent pursuit, or the precise cause of his injuries. Plaintiff claims that his injuries from the alleged excessive use of force are a skinned arm from the handcuffs, two or three scratches on his face, and forehead and a dislocated shoulder. Plaintiff concedes, however, that his injuries and the events of June 25, 2000, "[do not] cause [him] too much trouble" anymore. (*Id.* at 65.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if an examination of the pleadings, affidavits, and other proper discovery materials, viewed in the light most favorable to the non-moving party, indicates that there exists no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The essential question for the court's determination is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Unless the nonmoving party comes forward with specific facts demonstrating a genuine issue for trial, summary judgment is proper as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

### A. Defendants Purcell, Carrier, and Ford

#### 1. Excessive Force Pursuant to 42 U.S.C. § 1983

Plaintiff alleges that Corporal Purcell, Deputy Carrier, and Officer Ford employed excessive force in approaching Plaintiff's truck, shouting commands, physically removing Plaintiff from his truck, and arresting him. The Supreme Court has held that analysis of an excessive force claim under section 1983 begins with identifying the precise constitutional right allegedly violated by the challenged use of force. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). In most instances, either the Fourth Amendment's prohibition against unreasonable searches and seizures, or the

---

control." (*Id.*) The document also indicates that Plaintiff's speech was "somewhat slurred" and he was "groggy" due to sedation medication for his shoulder injury. (*Id.*) Under "social history," the document states that Plaintiff "drinks four drinks per day and prefers Canadian Mist." (*Id.*) The only notation relating to Plaintiff's mental condition was that his "mental status changes ... may have contributed to his motor vehicle accident," but that an alternative explanation for his behavior could be "alcohol withdrawal syndrome since he has abstained for 48 hours." (*Id.*)

Notably, in Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories, which was not filed with the court, Plaintiff responds to Question No. 10 that he "was diagnosed with dementia during his hospital admission on June 25, 2000," the night of the incident, and "has been treated for dementia" since the diagnosis. (Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ J. Ex. 7.) In response to Question No. 14, Plaintiff responds that he was suffering from a "temporary dementia episode" at the time of the accident. (*Id.*) Plaintiff further responds in Question No. 16 that the officers "should have recognized the fact that I was temporarily mentally impaired and unaware of my actions." (*Id.*)

Despite these responses, however, Plaintiff failed to produce any medical records or expert affidavits attesting to Plaintiff's "temporary mental impairment" or dementia at the time of the accident. In addition, Plaintiff denied in his own deposition that he had been diagnosed with a mental impairment or dementia. (Pl.'s Dep. at 47, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.)

Eighth Amendment's ban on cruel and unusual punishment is the protective shield invoked against physically intrusive governmental action. *Id.,* 490 U.S. at 394, 109 S.Ct. at 1871. Because Plaintiff alleges that the Fourth Amendment is the source of protection for his alleged injuries, this court will focus on that amendment.

The Fourth Amendment protects individuals against excessive force during the course of an arrest. *Id.,* 490 U.S. at 395, 109 S.Ct. at 1871 (holding that *"all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). This court must determine, from the officer's objective perspective, whether the particular use of force was reasonable in light of the prevailing circumstances. *Scott v. United States,* 436 U.S. 128, 137–39, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978).

In analyzing the reasonableness of a police officer's use of force, whether the least forceful alternative was used is not determinative. *See Anderson v. Russell,* 247 F.3d 125, 131 (4th Cir.2001), *cert. denied,* 534 U.S. 949, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001). The court is not responsible for taking a "second look" at alternative methods of force the police officer might have utilized. *Id.* Rather, the court's focus must be on "the circumstances as they existed at the moment force was used." *Id.* at 132; *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

This court will apply the objective reasonableness standard for excessive force to each of the defendant officers separately. When Corporal Purcell received communication of Plaintiff's two hit and run accidents, failure to heed emergency equipment devices (blue lights), and failure to stop after pursuit by the Highway Patrol, he was reasonable in assuming that once he joined the pursuit, Plaintiff would fail to heed his signals as well. Indeed, once Corporal Purcell engaged in the pursuit, Plaintiff failed to stop after three stop stick attempts and a roadblock with marked police vehicles. Given the severity of the crime at issue, the immediate threat to officer safety, and the fact that Plaintiff had evaded arrest by flight, Corporal Purcell's actions reflect a reasonable rather than an excessive use of force. *See Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. Furthermore, Plaintiff does not allege that any of his resulting injuries were caused by Corporal Purcell's use of force. Therefore, Corporal Purcell is entitled to judgment as a matter of law on Plaintiff's excessive force claim.

Similar to Corporal Purcell, Deputy Carrier was also reasonable in assuming that Plaintiff was using his truck as an assault weapon against the officers. Deputy Carrier's alleged use of excessive force includes positioning his truck directly in front of Plaintiff's truck at the end of the pursuit, shouting verbal commands at Plaintiff, and physically removing Plaintiff from his truck.[3] These actions, when viewed from the perspective of the officer, were reasonable given the threat of death or serious bodily harm that Plaintiff had posed during the pursuit. *See id.* In

---

**3.** Any allegation that Deputy Carrier applied excessive force in handcuffing Plaintiff while he was on the ground is baseless because the

record states that Deputy Gunter, a non-party, handcuffed Plaintiff. (Purcell Dep., Pl.'s Ex. 9.)

stopping Plaintiff from his driving rampage, whether voluntary or involuntary in origin, Deputy Carrier did not use a weapon, nor did he deviate from standard police procedure in removing Plaintiff from his truck. In addition, the record is devoid of any causal relationship between Plaintiff's injuries and Deputy Carrier's alleged use of excessive force. For these reasons, this court holds that Deputy Carrier is entitled to judgment as a matter of law on Plaintiff's excessive force claim.

■ When the evidence is viewed in the light most favorable to the non-moving party, Officer Ford arguably used more force than was reasonably necessary during the pursuit. The Guilford County Sheriff's Department acknowledges that Officer Ford exceeded the appropriate level of force by discharging his weapon at Plaintiff's tire. (Purcell Dep., Pl.'s Ex. 9, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.) Although use of deadly force during the pursuit should not be minimized, Officer Ford cannot be liable for a constitutional violation when proximate causation for Plaintiff's injuries is lacking. In order to hold an officer liable for excessive force, his actions must have directly and proximately caused the plaintiff's injuries. *See Shaw v. Stroud,* 13 F.3d 791, 800 (4th Cir.1994) ("the causal link in § 1983 cases is analogous to proximate cause"); *Slakan v. Porter,* 737 F.2d 368, 376 (4th Cir.1984) (holding that in excessive force cases pursuant to section 1983, "[t]hough their conduct may be fairly characterized as a breach of their legal and constitutional duties, they are not liable unless an affirmative casual link exists between their [a]ction and the harm suffered by [the plaintiff].").

■ Here, Plaintiff has failed to show how Officer Ford's discharge of his firearm caused any of his injuries, physical or non-physical. Officer Ford was not a participant when Plaintiff alleges he suffered injury at the end of the pursuit. (Ford Dep. at 16–19, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.) Officer Ford did not take part in Plaintiff's physical removal from his truck or Plaintiff's arrest. (*Id.*) The record further shows that Plaintiff did not slow down after Officer Ford fired, and that he was not even aware of the errant shot. (Purcell Dep., Pl.'s Ex. 9, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.) Because the evidence is so one-sided that Officer Ford's use of force did not cause any of Plaintiff's injuries, this court holds as a matter of law that Plaintiff was not deprived of any constitutional right. Therefore, Officer Ford's motion for summary judgment will be granted.

Despite the court's initial conclusions regarding Corporal Purcell, Deputy Carrier, and Officer Ford's use of force, the court must consider Plaintiff's expert evidence relating to the standard of objective reasonableness. Plaintiff relies heavily on the opinion of Dr. Louis A. Mayo, Ph.D., President of Mayo, Mayo and Associates, Inc., a corporation "devoted to solving police management and operations problems," in arguing that the Defendant officers were unreasonable in their use of force against Plaintiff. (Pl.'s Br. Resp. Defs.' Mot. Strike Expert Report Test. Ex. E.) The Fourth Circuit has addressed the admissibility of expert testimony in assisting the jury on the meaning of objective reasonableness in excessive force cases. In *Kopf v. Skyrm,*[4] the court held that whether expert testimony would be helpful in assisting the jury depends on the facts of each case. 993 F.2d 374, 379 (4th Cir.

4. *Kopf v. Skyrm,* 993 F.2d 374 (4th Cir.1993).

1993). The court noted that although an objective standard is employed in excessive force cases, it is defined by the reasonable *officer's* perspective, as opposed to the reasonable *person's* perspective. *Kopf,* 993 F.2d at 378. According to the court, an expert's specialized knowledge of the reasonableness of the use of force may be proper if the force at issue involves more than "bare hands."

> (Where force is reduced to its most primitive form—the bare hands—expert testimony might not be helpful. Add handcuffs, a gun, a slapjack, mace . . . and the jury may start to ask itself: what is mace? what is an officer's training on using a gun? how much damage can a slapjack do? Answering these questions may often be assisted by expert testimony.)

*Id.* at 379.

■ Because the most primitive form of force (bare hands) was applied at the point at which Plaintiff claims he was injured, Dr. Mayo's expert opinion is not helpful to the court's analysis of whether the police officers used excessive force. Unlike *Kopf,* no police dogs, slapjacks, or weapons of any kind were used in effecting Plaintiff's arrest. Instead, Deputy Carrier used verbal commands and his bare hands to physically remove Plaintiff from his truck. Then Deputy Gunter, an officer *not* named in this action, handcuffed Plaintiff while he was on the ground. (Pl.'s Br. Opp'n Mot. Summ. J. Ex. B.) Based on these facts, the police officers' perception is the only relevant perspective at issue. *Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1872; *Anderson,* 247 F.3d at 130–31; *Kopf,* 993 F.2d at 378. The court does not express an opinion with regard to the substance of

Dr. Mayo's report; rather, the court simply declines to consider the report because regardless of Dr. Mayo's conclusions, the court must judge the officers' use of force according to an objective standard based on what a reasonable officer would have done under similar circumstances. Expert testimony would not assist the jury in this determination because the force involved here does not amount to more than "bare hands." *Kopf,* 993 F.2d at 379.

Significantly, Plaintiff failed to offer any evidence that he was suffering from dementia or a similar medical impairment that the police officers should have recognized at the time of the pursuit or the arrest and that would have caused them to use a different level of force. Even if medical records had been offered, however, the evidence does not indicate that the police officers noticed any visible signs of mental impairment during the pursuit or when Plaintiff was forcibly removed from the truck and arrested.[5] In addition, characteristic signs of an impaired driver, such as swerving in and out of lanes and erratic movements inside the truck, were not observed by the police officers during the chase. Despite the fact that Plaintiff's actions may have been completely involuntary at the time of the chase, when the officers' safety was a grave concern, the record clearly states that the police officers did their best to protect themselves from a suspect who seemed to be blatantly violating their commands, signals, and efforts to stop him.

Because this court finds that Deputy Carrier, Corporal Purcell, and Officer Ford did not commit any constitutional violations in their individual or official capacities, the defenses of qualified or per-

---

5. The closest thing to recognition of a mental impairment was Deputy Carrier's observation that Plaintiff "was not acting right" and that "[h]is mannerisms were not right" *after* he

was arrested. (Carrier Dep. at 34, Defs. Purcell, Carrier, Ford, Barnes, and Guilford County's Mot. Summ. J.)

sonal immunities are not applicable and therefore will not be discussed.

### B. Defendants Barnes and Guilford County—Supervisory Liability

■ As opposed to the three aforementioned defendants of the Guilford County Sheriff's Department, Plaintiff alleges that Sheriff Barnes violated Plaintiff's Fourth Amendment rights in his official capacity only. This court finds no basis of liability for either Sheriff Barnes or Guilford County because the other three defendant officers committed no constitutional violations. Absent liability on the part of one of the deputies, neither Sheriff Barnes nor Guilford County can be liable to Plaintiff. *Hinkle v. City of Clarksburg,* 81 F.3d 416, 420 (4th Cir.1996) ("[i]n the absence of any underlying use of excessive force ... liability cannot be placed on either the non-shooting officers, a supervisor, or the City.)" Therefore, Defendants Barnes and Guilford County are entitled to summary judgment on Plaintiff's claim of excessive force.

### C. Defendant Peerless Insurance Company—Surety Liability

■ Upon examination of the public official bond, this court finds that Sheriff Barnes was the only principal on the bond issued by the surety, Peerless. (Def. Peerless' Mem. Law Supp. Mot. Dismiss, or in the Alternative, Summ. J. Ex. A.) Because the principal, Sheriff Barnes, was not involved in the events at issue in this case and is not liable for any of Plaintiff's injuries, Peerless cannot be held liable under the theory of surety liability. *See, e.g., American Sur. Co. v. Wheeling Structural Steel Co.,* 114 F.2d 237, 240 (4th Cir.1940) ("certainly the surety is not liable where no liability could be asserted against the principal"). Therefore, there is no issue of material fact about whether Defendant

Peerless Insurance Company is liable as a surety for the alleged use of excessive force against Plaintiff.

### D. State Law Claims

■ This court dismisses Plaintiff's state law claims of negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, assault and battery because the court declines to extend pendent jurisdiction over such claims. *See* 28 U.S.C. § 1367(c) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("pendent jurisdiction is a doctrine of discretion, not a plaintiff's right ... if the federal claims are dismissed before trial ... the state law claims should be dismissed as well").

## IV. CONCLUSION

For the reasons set forth above, the court will grant Defendant Purcell, Carrier, Ford, Barnes, and Guilford County's Motion for Summary Judgment and will grant Defendant Peerless Insurance Company's Motion to Dismiss, or in the Alternative, for Summary Judgment.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.