**NEWARK INSURANCE COMPANY,**
Plaintiff,

v.

**Jack W. DAVIS, Defendant.**

Civ. A. No. 764.

United States District Court
S. D. West Virginia,
Huntington Division.

March 23, 1956.

John E. Jenkins (Jenkins & Jenkins, Huntington, W. Va., on brief), for plaintiff.

E. A. Marshall (Fitzpatrick, Marshall, Huddleston & Bolen, Huntington, W. Va., on brief), for defendant.

HARRY E. WATKINS, District Judge.

Here the plaintiff insurance company seeks to recover from the defendant the amount it has paid to its assured under a fire insurance policy on the theory that the building was set on fire by reason of the negligence of the defendant.

The fire occurred on the premises of the Evans Grocery Company at 2445 Third Avenue in the City of Huntington, West Virginia, on the evening of August 18, 1954. The defendant is a construction contractor and at the time of the fire was engaged in constructing an addition or an enlargement to the existing building. The plaintiff had insured Evans Grocery Company against damage occasioned by fire, and upon payment of the damages is subrogated to the rights of Evans Grocery Company in this action. The case was tried by the court in lieu of a jury. There is much conflict in the evidence, a conflict which can only be resolved by disregarding much of the testimony of some of the witnesses as untrustworthy. After hearing the testimony and observing the demeanor of the witnesses, the court makes the following findings of fact and conclusions of law:

### Findings of Fact.

It appears that during the construction work it was necessary to weld steel plates to the stringers, or I-Beams, and

the trusses of the existing building. To do this the edge of the roof was rolled back exposing the area where the welding was to be done and creating an opening from the outside of the building into the attic. At the end of the day on August 18, 1954, one Cornell, an employee of defendant, had been welding in the opening at the edge of the roof and on the second column from the front of the building. Cornell was called as a witness for the plaintiff. He testified that he welded with his torch pointed straight into the building; that his welding torch gave off white hot sparks which went into the loft of the building in a steady stream of sparks in an area where there was wood sheathing and paper covered rock wool; that the sparks were flying in and around the sheathing; that during this welding operation he used a board shield, but that he knew it was not the proper type of shield in that it was not notched so as to fit tightly against the curvature of the "I" beams and prevent sparks from entering the loft of the building; that he remarked to a fellow employee (whose name he did not recall) that it would cause a fire; that properly notched boards were made and given to him the morning after the fire; that he knew the building might catch fire and that if he had had a properly notched shield it would have prevented the sparks from entering the building loft; that it was customary for welders and contractors to take greater precautions with respect to fire; and that he left the job at quitting time about four o'clock P. M. without making any inspection or looking for fire. The fire was discovered by a neighbor who saw smoke coming from the place where the welders were last working and gave an immediate fire alarm, which was received by the fire department at 5:06 P. M.

The evidence shows clearly that the origin of the fire was at the place where Cornell was last working. There was no wiring in the area of the seat of the fire which could have caused the fire. From the char found at the seat of the fire it was a smouldering type of fire at first and had been smouldering about one-half hour to two hours. The fire was in existence when the defendant's superintendent made his inspection and a careful inspection would have revealed the fire much earlier. This testimony of the three disinterested firemen as to physical conditions is worthy of belief. In response to a hypothetical question which fairly assumed the probative facts contained in the record tending to support plaintiff's theory on the question as to the origin of the fire, all stated in their opinions the fire was caused by the welding sparks.

The defendant called three witnesses to contradict some of Cornell's testimony, Erskine, Dick and Miller. There is much inconsistency and actual contradiction in their own testimony. Erskine testified that he sent Dick to the welding scaffold once or twice for a total of ten minutes on the day of the fire to see if the shields were in place. Dick testified that he was on the scaffold from 8:30 A. M. until noon, and from 12:30 P. M. until 4:00 P. M. every minute they were welding; that he was there continuously during the day holding the shields. But Miller testified it was he who took care of putting the shields in place, that Dick didn't do it and that it wasn't necessary for anyone to hold the shields. Erskine admitted that Cornell was not using the shields several times during the day of the fire and says that Cornell would not follow his instructions, whereas Miller said Erskine would never criticize the welder for not moving the shields since it would not be the welder's job to do so; that it wasn't necessary for anyone else to move the shields or to hold the shields since he did that job himself.

Defendant's employee Erskine knew that there was a fire danger due to the particular conditions and the inflammable materials near the place where the welding was being done, and he so testified. Cornell left the building without bothering to look for fire, and so testified.

In my opinion the evidence of Cornell is the more credible, and his evidence is worthy of belief. His statements as to what occurred, as recited above, are therefore adopted as the court's findings of fact. The acts of the employees, including Cornell, in doing this welding job were the acts of the defendant.

■ The defendant and his employees were guilty of three separate acts of negligence which proximately caused plaintiff's damage. First, the defendant failed to maintain the proper safeguards to prevent the sparks from going into the attic, knowing of the danger involved in the welding process. Second, the welder continued to weld in spite of the fact that proper safeguards had not been provided and that the sparks were going into the attic where he knew that they were likely to cause fire. Third, the construction superintendent failed to discover the fire when he made his last round of inspection at approximately 4:50 P. M., whereas a careful inspection would have discovered the fire. The evidence clearly shows that the welding caused the fire.

After the fire an inventory was taken of the goods and merchandise damaged by the fire, smoke, and water used to put it out. Plaintiff attempted to prove several items of damage, but failed in several of them because the witnesses could not testify as to the conditions of the article prior to the fire and as to the amount of repairs required to put them in substantially the same condition as before and whether the repairs were reasonable and necessary. However, the evidence does show that it was necessary to salvage $5,102.62 worth of canned goods. The value of the goods was determined by their wholesale cost. This merchandise was sold at a salvage sale for $398.26, a fair and reasonable price. It also required 750 man hours to clean up the store at a cost of $1 per hour. Therefore the proven damages are $5,102.62 less $398.26, or $4,704.36, plus $750 for cleaning up, which makes a total of $5,454.36 in damages, which amount the plaintiff is entitled to recover from the defendant.

## Conclusions of Law.

■ Counsel for both sides contend that this is a case for the application of the doctrine of res ipsa loquitur. However, the doctrine of res ipsa loquitur has no application where all the facts and circumstances appear in evidence. Nothing is then left to inference, and the necessity for the doctrine does not exist. It is not to be invoked when the evidence is actually presented. 38 Am. Jur., Negligence, § 303, p. 999.

This case is very comparable to Reese v. Lowry, W.Va., 86 S.E.2d 381, wherein fire had destroyed the plaintiff's residence. The negligence charged was the improper installation of a coal furnace. Plaintiff's testimony showed that the top of the furnace was within an inch to an inch and three quarters from the wooden joist, without any insulation between them, and that the electrical thermostatic controls had ceased working shortly after installation. Knowing this the plaintiff nevertheless put sufficient coal in the furnace to heat the house throughout a chilly night, and within about two hours he discovered a fire in the floor over the top of the furnace. There was also evidence that there was nothing else in the area which could cause the fire. The Supreme Court of Appeals of West Virginia held that the evidence was sufficient to go to the jury on the question of whether the negligent installation was the proximate cause of the fire which destroyed the premises, and that the trial court erred in setting aside a jury verdict for the plaintiff. Stated another way, the court held that it was proper for the jury to believe from such evidence that the fire was caused by the top of the furnace being so close to the wooden joist that the heat from it would start the fire. The evidence in the case at bar makes a stronger case than the Reese case. That the fire in the present case was caused by the sparks from the welding operation is established by a clear preponderance of the evidence.

■ Although the defendant does not set up contributory negligence as a defense in his answer, yet in his pre-trial

brief counsel for the defendant asserts that plaintiff's insured, to whose rights plaintiff has been subrogated, was guilty of negligence on its own part, and charges failure to use due care to safeguard its premises and the duty to inspect the welding operation. Where the defendant relies upon the defense of contributory negligence he has the burden of proving that the plaintiff was guilty of negligence which proximately contributed to his injury, unless such negligence is disclosed by plaintiff's evidence, or may be fairly inferred from the circumstances portrayed by the evidence as a whole. Reese v. Lowry, W.Va., 86 S.E.2d 381, 388; see also 13 M.J., Negligence, § 56. There is no evidence in this record of any negligence on the part of the plaintiff's insured.

The defendant takes the further position that the plaintiff assumed the risk of just such an injury, citing cases which define assumption of risk as— "venturousness". The defendant cannot prevail upon this defense. In Wright v. Valan, W.Va., 43 S.E.2d 364, at page 371, Judge Haymond said that, although one may know of the possibility of fire, if he has no reason to expect that fire will occur, he is not barred from recovery by the doctrine of assumption of risk.

Plaintiff should recover damages of $5,454.36.