296 S.E.2d 345

**CUMMINS ENGINES OF WEST VIRGINIA, INC.**

v.

**PARK CORPORATION.**

**No. 15003.**

Supreme Court of Appeals of West Virginia.

June 23, 1982.

Rehearing Denied Sept. 16, 1982.

---

P. Nathan Bowles, Jr., Charles M. Love, III, Charleston, for appellee.

W. E. Mohler, Charleston, for appellant.

PER CURIAM:

Appellant, Park Corporation (hereinafter Park), appeals the January 18, 1980 final order of the Circuit Court of Kanawha County which affirmed a verdict obtained by appellee, Cummins Engines of West Virginia (hereinafter Cummins), against Park in the sum of $18,000. Park contends that the trial judge erred in giving certain instructions to the jury, and in refusing to give other instructions offered by Park. We disagree and affirm.

Park Corporation was lessor of a complex of buildings known as the Charleston Ordnance Center, which housed various businesses. Cummins was one of approximately 15 tenants in Ordnance Center Building No. 309. It leased approximately 40,000 square feet of the 1,000,000 square feet under roof in the building. Cummins used the premises primarily for the rebuilding and storage of diesel engine parts, though some offices were located within the leasehold.

Cummins had had problems with leaks into the premises throughout its tenancy. Park provided maintenance personnel to assist Cummins in its clean-up efforts. Park also patched the roof and maintained drainpipes, including those portions which passed briefly through the interior of the building.

On July 10, 1977 a heavy rain fell and the part of Building 309 which housed Cummins was flooded, resulting in damage to stored parts and other items. The precise means by which the water entered the premises was the subject of dispute between the parties, as was the issue of responsibility for the losses incurred by Cummins. Evidence offered by Park indicated that the water may have come into the premises from leaky drain pipes as they passed through the interior.

Cummins brought suit seeking recovery from Park for damages alleged to have

resulted from the flood and on October 23, 1979 the matter came to trial. At the close of the evidence, the Court made two rulings which were later reflected in the instructions to the jury. First, the trial judge noted that, after reading the lease language and hearing the evidence, there was no question but that Park was responsible for all drains and drainpipes running from the roof, though they might pass through the interior. The court later instructed the jury that:

"Based on the lease, entered as an exhibit, in paragraph 11 thereof, and the evidence, the court has ruled that it was the duty of Park Corporation, the landlord, to maintain and care for the roof and exterior facilities and portions of the building, The court has ruled that includes the drain pipes and drains and even though they come down through the interior of the building, it was the duty of the landlord to maintain those."

Second, the court surveyed the evidence presented, and concluded that Park had offered no evidence of negligence on the part of Cummins. As a result, the judge refused Defendant's Instruction No. 4, offered by Park, which would have instructed the jury with regard to comparative negligence.*

The jury returned a verdict for Cummins in the sum of $18,000. Park's motion to set aside the verdict was denied, and this appeal followed.

Park maintains on appeal that the issue of its duty to maintain the interior drainpipes presented a jury question, and thus the court erred in ruling as a matter of law that Park had a duty to maintain these structures. Park also contends that there was evidence of negligence on the part of Cummins such as would have supported the jury's finding of the same. Thus, Park argues, the trial court erred in refusing its proffered instruction on Cummins' negligence. We have examined the record closely, and we hold that the trial court was correct in both rulings.

As to the duty to maintain interior drainpipes, the trial court rested its decision on alternative grounds. First the lease language clearly and unambiguously required the landlord to maintain these structures, and second, the practical construction given the lease by the parties indicated that the maintenance of these pipes was Park's duty. The relevant language from the lease provides that:

"Landlord shall, at its own cost and expense, keep the roof, exterior and structural portion of the premises in good repair.

"Tenant shall, at its own cost and expense, keep in good condition, reasonable wear and tear excepted, the interior of the building, including, but not limited to, such items as windows, lightbulbs, restrooms, floors, plumbing, heating, wiring, air conditioning, etc. . . .

"Tenant agrees that any additions, modifications or other changes required by the Federal Occupational Safety and Health Act in and about the leased premises due to Tenant's useage [sic] of the leased premises, excluding, however, the roof exterior and structural portion of the premises, shall be at the sole expense and the sole responsibility of the Tenant."

We need not express an opinion as to whether this language alone would sustain a ruling as a matter of law as to Park's duty in regard to maintenance of the pipes. Assuming that the language, read most favorably to Park, might be said to be ambiguous as to their duty, the practical construction put on the language is entitled to great weight in determining the intent of the parties. As we have stated in Syllabus Point 1, *Fredeking v. Grimmet,* 140 W.Va. 745, 86 S.E.2d 554 (1955) and in *Annon v. Lucas, Sheriff,* 155 W.Va. 368, 376, 185 S.E.2d 343, 349 (1971): "When a contract is ambiguous and of doubtful and

---

* Though the trial judge and the parties refer to the doctrine as contributory negligence, they were clearly applying the modified comparative negligence standard adopted in *Bradley v. Appa-* *lachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), shortly before this case came to trial in October of 1979.

uncertain meaning, and the parties have by their contemporaneous or subsequent conduct placed a construction upon it which is reasonable, that construction will be adopted by the court." Throughout the tenancy Park maintained the drainpipes from the roof, including those portions passing through the interior of the building. The conduct of both parties indicated that they construed the lease to include this maintenance as one of Park's duties as landlord. The trial court was correct in adopting this practical construction of the lease.

■ Appellants contend that there was evidence warranting an instruction on comparative negligence. The trial court held that there was no evidence indicating negligence on Cummins' part, and refused the instruction. After a careful review of the record we agree with the trial judge that there was no evidence of negligence by Cummins, and, therefore, the judge was correct in refusing this instruction.

■ Finally, we note that Park relied on certain language in the lease which it contends indemnifies it against claims that Cummins might have against Park as a result of Park's own negligence. The trial judge examined the lease language and concluded, as a matter of law, that the provisions relied upon referred only to the situation in which the landlord or tenant was indemnified by a third party, such as an insurance company, for a claim against the other party to the lease. On examining the language closely, we conclude that this is the only reasonable interpretation which it will bear.

A review of the record reveals that there was ample evidence supporting the jury verdict, and, accordingly the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.