Argued and submitted May 7, affirmed August 18,
reconsideration allowed; former opinion adhered to
as modified (60 Or App 39, 652 P2d 832) October 27, 1982

# GOLDEN 'B' PRODUCTS, INC. et al,
## *Appellants,*
*v.*
# CLARK EQUIPMENT COMPANY,
## *Respondent.*

## (No. 106,286, CA 19998)

649 P2d 813

Michael C. McClinton, Salem, argued the cause for appellants. With him on the briefs was Clark, Marsh, Lindauer, McClinton & Vollmar, Salem.

Katherine H. O'Neil, and W. A. Jerry North, Portland, argued the cause for respondent. With them on the brief was Schwabe, Williamson, Wyatt, Moore, & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this products liability action to recover damages resulting from a fire, which plaintiffs allege was caused by defects in a machine manufactured by defendant. The jury found that both parties were causally responsible for the fire, but that plaintiffs contributed more to causing the accident than did defendant. Plaintiffs appeal from the resulting judgment for defendant, contending, *inter alia,* that the trial court erred, first, by admitting "evidence of [p]laintiffs' noncompliance [with] numerous state and local building, fire, and safety codes" and, second, by the fact that and the manner in which the issue of comparative fault was submitted to the jury. We affirm.

Plaintiff Golden 'B' Products, Inc. (Golden B) was incorporated in 1974 by plaintiffs Burt and Lucille Harrison. Golden B was in the business of producing animal feed from waste straw that remained after the harvesting of grass seed. In June, 1976, the Golden B building was destroyed by fire after a Model 722 Melroe Bobcat (Bobcat), an internal combustion machine manufactured by defendant, was used by an employee of Golden B to perform cleanup work inside the building. Property of the individual plaintiffs was also damaged or destroyed by the fire.

The Bobcat had been supplied by a distributor of defendant's to a farmer in the vicinity of the Golden B plant, and the farmer had loaned the machine to the Harrisons for use in Golden B's operations. Although the parties do not appear to question that the fire was ignited by the Bobcat, they do not agree as to the specific chain of events. Plaintiffs contend that the fire resulted from the emission of flame and hot metallic particles from a defective muffler and exhaust system; defendant contends that ignition resulted from backfiring, possibly caused by the manner in which Golden B's employee switched the machine off. There was sufficient evidence to support either theory. There was also evidence that, before the Bobcat's use resulted in the fire, the Harrisons and others connected with Golden B's operations were aware that the machine had been backfiring.

At the time of the fire, the Golden B building was in violation of fire, safety and building codes and standards. Plaintiffs had been apprised of that fact and had not made

appropriate corrections. There were a variety of violations, but the principal problem was that the building was not safe for the housing of dry straw and hay or for the accumulations of combustible airborne particles that were produced by Golden B's operations. Among the safety standards with which plaintiffs did not comply was one forbidding the use of internal combustion machines in hazardous environments such as the Golden B building.

■ Plaintiffs' first assignment of error is that evidence of the code and safety standard violations was inadmissible. Plaintiffs' first argument in support of that assignment is that defendant is not within the class intended to be protected by the codes and therefore cannot rely on them. *See Davis v. Portland General Electric Co.,* 286 Or 195, 593 P2d 1135 (1979); *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966). Most of the evidence of code non-compliance was admitted for the limited purpose of showing plaintiffs' knowledge of the fire hazard, to support defendant's affirmative defense that plaintiffs had assumed the risk. The evidence of the standard relating to the use of an internal combustion machine in the building was admitted to show that plaintiffs' use of the machine was not reasonably foreseeable by defendant.

In *Davis v. Portland General Electric Co., supra,* the court stated:

"Plaintiff objected to the evidence on the basis that defendant lacked standing to raise the employer's violation of such codes, citing *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 199-200, 421 P2d 370 (1966). In *Rich* we held that while safety codes promulgated by the Workmen's (now Workers') Compensation Board pursuant to ORS 654.025 set a standard of care for employers with respect to employees, they do not do so with respect to non-employees. We therefore held that the plaintiff in that case, who was a job seeker and not an employee, could not take advantage of those codes in his action.

"Plaintiff misconstrues *Rich* as holding that evidence of violations of the Safety Code 'can be raised in private civil litigation only on behalf of an employee.' *Rich does not state a rule of standing, but one of relevancy.* * * *" (Emphasis added.) 286 Or at 199.

■      We conclude that the evidence here was relevant to the limited issues for which it was admitted. We held in *Davis v. Pacific Diesel,* 41 Or App 597, 598 P2d 1228 (1979), *rev den* 288 Or 253 (1980),

> "* * * that the existence of the safety regulation could properly be considered by the jury in determining the foreseeable use of the compressor, and the trial court did not err in so instructing the jury." 41 Or App at 607.

*See also Rice v. Hyster Co.,* 273 Or 191, 202, 540 P2d 989 (1975).

Plaintiffs argue, however:

> "In the present case, the fire was not caused by an inherent risk of taking the Bobcat into the Golden 'B' building, but was caused by a defect in that machine. In other words, this is not a situation where the fire was caused simply due to the existence of the machine in the building. To the contrary, had the defect in the machine not been present, there would have been no fire, despite the use of an internal combustion machine inside the building and despite the noncompliance with the various code sections.

> "Thus, the ever-present defect in the machine rendered it unreasonably dangerous wherever it might be used, and no distinction should be made based upon location. * * *

> "The concept of foreseeability is applicable and apparent in cases of design defects. There, a machine is manufactured properly. However, due to some characteristic of the machine, an inherent risk manifests itself during certain uses. Unlike a design defect case, a manufacturing defect case is established by showing that the machine was not operating the way it was manufactured to operate. Under this situation, the risk from the defect is ever present, and does not vary dependent upon the type of use to which it is put or the environment in which it is used."

In other words, plaintiffs now argue that the relevance of the code violation evidence depends on whether a design or manufacturing defect was involved. Whatever merit there might be to that argument in the abstract, it does not assist plaintiffs. They *alleged* that the *design as well as the manufacture* of the muffler and of the fuel and carburetion system of the machine were defective.

■    The remaining point plaintiffs make in support of their contention that the evidence of code violations should have been excluded is also relevant to their contention that the court erred in submitting the issue of comparative fault to the jury and in various particulars relating to the submission of that issue. Plaintiffs argue that "violations of those codes would only amount to simple negligence" and that the only kind of conduct that can be considered for comparative fault purposes in products liability cases is assumption of the risk (citing *Holdsclaw v. Warren,* 45 Or App 153, 607 P2d 1208, *rev den* 289 Or 209 (1980)).

Plaintiffs' argument is incorrect. The evidence was admitted in connection with defendant's affirmative defense that plaintiffs did assume the risk and was properly admitted for that purpose. We do not agree that the evidence was probative only of ordinary negligence; the evidence of noncompliance and of plaintiffs' awareness of it also tended to show that plaintiffs had knowledge of the dangerous condition and assumed the risk of fire.

More basically, two cases decided by the Supreme Court since this case was tried have broadened substantially the types of negligence by a plaintiff that can be considered as comparative fault in products liability cases. The court stated in *Sandford v. Chev. Div. Gen. Motors,* 292 Or 590, 642 P2d 624 (1982):

> "* * * When an injured claimant's misconduct is a cause in fact of the injury, it can defeat a products liability claim if the claimant's fault is 'greater than' the defendants' combined fault involved in marketing the defective product. If it is not greater, plaintiff's fault proportionately reduces her recoverable damages. 'Fault' includes contributory negligence except for such unobservant, inattentive, ignorant, or awkward failure of the injured party to discover the defect or to guard against it as is taken into account in finding the particular product dangerously defective. * * *" 292 Or at 610.

*See also Wilson v. B. F. Goodrich,* 292 Or 626, 628-29, 642 P2d 644 (1982).

*Sandford* and *Wilson* have, of course, superseded *Holdsclaw v. Warren, supra,* as the law of Oregon, and the two Supreme Court decisions, rather than *Holdsclaw,* now

apply to plaintiffs' arguments regarding the submission of the comparative fault issue to the jury. As a practical matter, that may make no difference here. However much more they may mean, it does appear clear that *Sandford* and *Wilson* include express assumption of the risk as one of the kinds of plaintiff's fault that may be compared with a defendant's fault in a products liability case. Some of plaintiffs' arguments on the comparative fault issue are to the effect that the jury was permitted to consider kinds of contributory negligence by plaintiffs other than their assumption of the risk. For the reasons noted in our discussion of plaintiffs' contention that the code violations were probative only of "simple" negligence and for the reasons we will note in our discussion of the third assignment of error, we disagree with those arguments. We therefore conclude that, under either the *Holdsclaw* rule that was understood to be the law at the time of trial or the *Sandford-Wilson* rule that was later adopted, the trial court committed no error unfavorable to plaintiffs in determining what fault of plaintiffs the jury could consider.

Plaintiffs argue in their second assignment of error:

"The court erred in submitting the issue of comparative fault to the jury when there was no evidence that the Plaintiffs had actual knowledge of the particular risk of the defect in Defendant's machine and, nevertheless, unreasonably proceeded to use the machine."

Plaintiffs rely on the statement in *Findlay v. Copeland Lumber Co.*, 265 Or 300, 509 P2d 28 (1973), that

"* * * the assumption of risk concept * * * applies only when the user of the product is aware of the danger created by the product's defective condition and, nevertheless, unreasonably proceeds to use it. * * *" 265 Or at 305-06.

Plaintiffs also rely on *Johnson v. Clark Equip. Co.*, 274 Or 403, 547 P2d 132 (1976), where the court stated:

"* * * The defendant must show, first, that the plaintiff *himself* actually knew and appreciated the particular risk or danger created by the defect; second, that plaintiff voluntarily encountered the risk while realizing the danger; and, third, that plaintiff's decision to voluntarily encounter the known risk was unreasonable. * * *" (Emphasis in original.) 274 Or at 409.

Plaintiffs conclude that the court's language "indicates that the user must have knowledge of the *particular* defect and of the *specific risks* it presents" (emphasis plaintiffs') and that "none of the witnesses were aware of the particular risk that the machine would emit fire and red hot metallic particles from its exhaust."

■ Defendant argues that the meaning of the *Findlay* and *Johnson* language is not that the plaintiff must be aware of the particular *defect,* but that he must be aware of the *danger* — in this case, fire. Defendant also argues that "plaintiffs did have knowledge of the specific defect: backfiring." We agree *generally* with defendant's second argument.[1] While it might be arguable that a plaintiff cannot assume a risk without knowing that there is something—a defect or otherwise—that can activate the risk, there was evidence here from which the jury could find that plaintiffs knew of *a* defect in the operation of the machine which could cause fire in the hazardous environment.

■ Plaintiffs' third assignment is:

"The trial court erred in giving the following instruction to the jury:

" "* * * [I]f plaintiffs or their employees discovered a dangerously defective condition of the machine and were aware of the danger of the machine's use while in that condition and they nevertheless proceeded unreasonably to make use of that machine and the fire and damages were caused by such condition, plaintiffs would be *contributorily negligent.*' " (Emphasis plaintiffs'.)

Plaintiffs make three arguments in support of that assignment of error. We have considered and rejected the first in another context, and the third does not require discussion. The second is:

"* * * [B]y labeling the defense 'contributory negligence,' the court invited the jury to conclude that ordinary negligence would be a defense to the Plaintiffs' claim. That invitation was enhanced by the use of that same term in the verdict form submitted to the jury (see Fourth Assignment of Error). At the very least, the use of that term would be confusing and misleading to the jury, since the concept of contributory negligence is more familiar than

---

[1] We do not address the first.

are the precisely defined and limited defenses to strict liability."

There is no merit to the argument. The instructions as a whole clearly communicated to the jury what factual issues it was to consider. Moreover, the use of the term "contributory negligence" was not an incorrect means of referring to the assumption of the risk defense. *See Baccelleri v. Hyster Co.*, 287 Or 3, 10, 597 P2d 351 (1979).

■    Plaintiffs' fourth assignment of error raises points we have discussed or that require no discussion. The final assignment is that the court erred in submitting the issue of misuse to the jury and in instructing the jury on the issue. The assignment is moot. The court instructed the jury, in effect, that misuse was a complete defense. The jury found that defendant was responsible for causing the damage to plaintiffs, albeit less so than were plaintiffs.

We find no error.[2]

Affirmed.

---

[2] The verdict form asked the jury to indicate the amount of plaintiffs' comparative fault by answering the question:

"In what percentage did the negligence of Plaintiffs contribute to the accident?"

That comparative causation approach does not accord with the fault apportionment formula later adopted in *Sandford v. Chev. Div. Gen. Motors, supra. See* 292 Or at 606-09. However, plaintiffs make no argument on appeal concerning the apportionment formula. Therefore, we need not consider whether a trial court's failure to apply the *Sandford* formula in a case tried before the decision in *Sandford* could be reversible error if raised.