413 S.E.2d 85

**DESCO CORPORATION, dba Colliers Industries, Plaintiff Below, Appellee,**

**v.**

**HARRY W. TRUSHEL CONSTRUCTION COMPANY and Fire Foe Corporation, Defendants Below, Appellees.**

**FIRE FOE CORPORATION, Third–Party Plaintiff Below,**

**v.**

**INDUSTRIAL RISK INSURERS, Third–Party Defendant Below.**

No. 19993.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1991.

Decided Dec. 6, 1991.

**432**

Douglas McKay, Paul M. McKay, John D. McKay, McKay & McKay, Wheeling, for appellee Fire Foe Corp.

Jeffrey A. Holmstrand, Bachmann, Hess, Bachmann & Garden, Wheeling, for appellee Harry W. Trushel Const. Co.

MILLER, Chief Justice:

Desco Corporation (Desco), doing business as Colliers Industries, appeals a final order of the Circuit Court of Hancock County, dated August 20, 1990, denying its motion for a new trial on its negligence cause of action and limiting Desco's damages on its breach of contract action to the cost of completing installation of a sprinkler system. Desco had sought to recover approximately $2,000,000 when its new warehouse and inventory were destroyed by a fire. Desco contends that the damages were caused because of the delay in installing the sprinkler system.

## I.

### *Facts*

Desco owned and operated a factory in Weirton, West Virginia, which manufactured and distributed garage door hardware, metal caulking guns, and joist hangers. In 1986, Desco had a substantial increase in business, and it needed additional storage space.

Consequently, on July 22, 1986, Desco entered into a written contract with Harry W. Trushel Construction Company (Trushel) to build a 30,000–square–foot warehouse adjacent to Desco's manufacturing plant. The contract required Trushel to design and install a sprinkler system as fire protection for the warehouse. The original contract deadline was December 31, 1986, but, because of construction delays, the parties agreed to extend the completion date until February, 1987.

Trushel subcontracted with Fire Foe Corporation (Fire Foe) to design and install the sprinkler system. Desco's property damage insurer, Industrial Risk Insurers (IRI), required Fire Foe to submit its design

A. Richard Bailey, Elaine M. Rinaldi, Cozen & O'Connor, Philadelphia, Pa., for appellant.

plans to IRI for approval. Moreover, after the sprinkler system was installed, IRI insisted on conducting a field test on the fire protection system before certifying it as fit for operation. As required, Fire Foe obtained IRI's approval for the system design.

By the beginning of 1987, the warehouse was substantially completed. Fire Foe began the actual installation of the sprinkler system in January, 1987, and, even though the system was not operational, Fire Foe last worked at the job site on March 9, 1987. Nonetheless, Desco began moving inventory into the warehouse as early as January, 1987. From March, 1987, until June, 1987, Desco maintains that it made several contacts with both Trushel and Jack Kelly Excavating Company, a contractor hired directly by Desco, in an effort to get the system operational. Moreover, realizing the risks associated with placing inventory in a warehouse which did not have a fire protection system, Desco instituted a 24–hour fire watch, which required the warehouse supervisor to check the building every few hours. Notwithstanding these efforts, a fire broke out near the northwest wall of the warehouse on June 14, 1987. The fire spread rapidly and caused approximately $2 million in damages.

After IRI paid Desco monies owed under its fire insurance policy on the warehouse, it brought this action as subrogee of Desco against Trushel, Fire Foe, and Jack Kelly Excavating, alleging negligence, breach of contract, and breach of warranty. The breach of warranty claim was later abandoned. Shortly thereafter, Fire Foe impleaded IRI as a third-party defendant. On August 28, 1989, the trial court denied IRI's motion for summary judgment.

At trial, two reasons were advanced as to why the sprinkler system was not functional. Desco contended that before the system could be activated, an air compressor had to be hooked up. Although the air compressor was hooked up on March 9, 1987, after Fire Foe had left the job site, Fire Foe never returned to activate the sprinkler system. Trushel and Fire Foe argued that there was a defective post-indicator valve (PIV) and that until that valve was replaced, the system could not be activated. Replacement of the PIV was the responsibility of Jack Kelly Excavating, who had originally installed the valve. Because the PIV was never replaced, Fire Foe never returned to the job site to activate the system.

After Desco presented its case-in-chief, the court directed a verdict for IRI against Fire Foe on the third-party complaint. Moreover, because Desco and Trushel stipulated Trushel had breached the contract, the court directed a verdict for Desco on the breach of contract action. The parties further stipulated that Desco sustained $2,178,030 worth of damages.

The parties agreed to have the court decide the amount of contract damages in lieu of submitting this issue to the jury. Consequently, the court instructed the jury exclusively on the negligence issue. Over Desco's objection, the trial court gave an instruction on the doctrine of assumption of risk and refused to further charge the jury that it could consider the reasonableness of Desco's actions when determining whether it had assumed the risk. The jury returned a verdict allocating fault among the parties as follows: Desco—55 percent, Trushel—30 percent, Fire Foe—15 percent, and Jack Kelly Excavating—0 percent.[1]

On August 20, 1990, the trial court awarded Desco contract damages only in the amount necessary to complete the installation of the sprinkler system and rejected its claim to recover the $2,000,000 worth of fire loss damage.

## II.

We initially address the contract damage claim. Desco's argument is straightfor-

---

1. Because both assumption of the risk and contributory negligence were asserted against Desco, the jury was asked to divide Desco's total fault between its assumption of risk and contributory negligence components. The jury allocated 75 percent as assumption of the risk and 25 percent as contributory negligence. For the reasons more fully developed in Part III(B), *infra,* we find this additional breakdown unnecessary.

ward, i.e., that the damages it suffered were within the reasonable contemplation of the parties. The defendants disagree.

■ Our rule for damages as a result of a breach of contract is that recovery may be obtained for those damages which either arise naturally from the breach or may reasonably have been within the contemplation of the parties at the time they made the contract. We articulated this general rule in Syllabus Point 2 of *Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro*, 158 W.Va. 708, 214 S.E.2d 823 (1975):

> "Compensatory damages recoverable by an injured party incurred through the breach of a contractual obligation are those as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things— from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of its breach."

■ *Sellaro* authorizes two categories of damages in a breach of contract action. The first is those directly flowing from the contract breach. As to these damages, there is no requirement that the parties must have actually anticipated them because they are a natural consequence of the breach. The second category is indirect or consequential damages that arise from the special circumstances of the contract. In order to recover these damages, the plaintiff must show that at the time of the contract the parties could reasonably have anticipated that these damages would be a probable result of a breach.

We recognized consequential damages in *Lewis v. Welch Wholesale Flour & Feed*

*Co.*, 96 W.Va. 694, 123 S.E. 801 (1924). There, we permitted a lessee who had been denied the occupancy of the leased premises to recover special damages, which included the rent for storage of his goods and for damage to the goods because of dampness in the storage area. The evidence showed that warehouse space in the local area was virtually nonexistent, and this circumstance was known to both parties. They also knew that the lessee was in the furniture business and intended to use the leased premises as an additional warehouse. We concluded that the defendant should have reasonably known that the denial of the leased premises would cause the plaintiff to incur these special damages.

*Sellaro* cited *Lewis*, as well as Section 330 of the *Restatement of Contracts* (1932),[2] which was the forerunner of Section 351 of the *Restatement (Second) of Contracts* (1981), which states:

> "(1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
>
> "(2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
>
> (a) in the ordinary course of events, or
>
> (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know."[3]

Under a variety of fact patterns courts have considered whether the damages sought can be said to have followed normally from the contract breach or whether the damages were consequential or special in the sense that they did not naturally follow the breach where the defendant was

---

2. Section 330 of the *Restatement* provided:
"In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

3. Paragraph 3 of Section 351 enables a court to limit damages if justice so requires: "A court may limit damages for foreseeable loss by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance, or otherwise if it concludes that in the circumstances justice so requires in order to avoid disproportionate compensation."

aware of the facts that could give rise to such damages.

For example, in *Emery v. Caledonia Sand & Gravel Co., Inc.*, 117 N.H. 441, 374 A.2d 929 (1977), the plaintiffs contracted with a road construction company to remove some earth from their farm. The construction company agreed to fill the excavation at certain specified grade levels and to restore the top soil. The plaintiffs were not satisfied with the company's restoration of the land and filed suit to recover damages.

The cost of restoration was not a major issue in *Emery;* instead, the parties litigated over the plaintiffs' claim that for three years they lost the value of the hay crop that could have been grown on the land had there been sufficient top soil. The court found that these damages were within the reasonable contemplation of the parties under the restoration provisions of the contract because topsoil replacement was required. The New Hampshire court quoted from its earlier case of *Johnson v. Waisman Bros.*, 93 N.H. 133, 135, 36 A.2d 634, 636 (1944): " ' "If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury." ' " 117 N.H. at 446, 374 A.2d at 932. (Citation omitted).

In *Olson v. Quality–Pak Company*, 93 Idaho 607, 469 P.2d 45 (1970), the Idaho Supreme Court addressed whether contract damages were recoupable for the loss of a potato crop when the contractor failed to complete a potato cellar by the contract deadline of September 1. The court found that the contractor was aware that the plaintiff needed to store the crop in the cellar and that frost conditions normally occurred in that part of Idaho around the middle of September. The cellar was not completed until October 28. Under these facts, the court decided that the contractor should have anticipated, and thus should be chargeable with, the damage to the potato crop.

An excavating contractor who dug trenches for a sewer line and backfilled them was held liable in *Olson Plumbing & Heating, Inc. v. Douglas Jardine, Inc.*, 626 P.2d 750 (Colo.App.1981), for damage to the concrete paving and landscaping placed over the trenches. These improvements were damaged when the trenches subsided. The court concluded that the contractor should have been aware that pavement would be installed over the trenches and rejected the contractor's argument that natural water seepage was the sole cause of the problem: "A contractor is responsible for the natural, probable, and reasonably foreseeable consequences of a failure to perform his contract, including any foreseeable damages caused by natural obstacles." 626 P.2d at 752. (Citation omitted).

In *Strong v. Commercial Carpet Co., Inc.*, 163 Ind.App. 145, 322 N.E.2d 387 (1975), a carpet company had agreed to install a carpet in the plaintiff's home, but was delayed in completing the work because there was not enough carpeting. Before the job was finished, the plaintiff fell over an exposed tacking strip. When the plaintiff sued for personal injuries, the defendant claimed that this type of damage was not within the contemplation of the parties, and the trial court agreed. On appeal, this decision was reversed. The appellate court concluded that the foreseeability of the damages was an issue of fact to be decided by the jury.

In *A. Brown, Inc. v. Vermont Justin Corp.*, 148 Vt. 192, 531 A.2d 899 (1987), the plaintiff, a tenant of a building, had a lease obligating the defendant landlord to make repairs to the roof. The plaintiff notified the defendant that the roof was leaking on a number of occasions. The roof eventually collapsed, causing damage to the furnace and a number of appliances in the plaintiff's showroom. The defendant argued that the plaintiff had not shown that these special damages were contemplated by the parties at the time the lease was executed. The court brushed this argument aside, stating that "[t]he damages here are sufficiently directly related to the breach as to be held to be within the rea-

sonable contemplation of the makers of such contract." 148 Vt. at 196, 531 A.2d at 902.[4]

Finally, the Virginia Supreme Court in *Richmond Medical Supply Co., Inc. v. Clifton*, 235 Va. 584, 369 S.E.2d 407 (1988), addressed a situation in which a landlord had agreed in a lease to replace a defective exterior overhead door by August 1, 1983. The landlord breached his promise, and in November, 1983, thieves broke into the tenant's premises through the defective door and removed cash and inventory valued at $60,000. The tenant sued for the $60,000; however, the trial court granted summary judgment in favor of the landlord. The trial court found that the damages were not direct, but were remote or consequential damages and not within the contemplation of the parties.

The Virginia Supreme Court reversed, holding that whether consequential damages were within the contemplation of the parties was a question of fact for the jury: "Whether claimed damages are direct or consequential is a question of law for the trial court. Whether special circumstances were within the contemplation of the parties so as to justify the recovery of consequential damages is a question of fact for the jury." 235 Va. at 586–87, 369 S.E.2d at 409. (Citation omitted). *See also Fairfax County Redevelopment & Housing Auth., Inc. v. Hurst & Assoc. Consulting Eng'rs, Inc.*, 231 Va. 164, 343 S.E.2d 294 (1986).

We have not had occasion to consider this evidentiary rule. Our cases concerning contract damages have not emphasized the distinction between direct and consequential damages. However, we have applied this rule even though we have not adopted its precise terminology in a syllabus point. We believe that the foregoing rule set out in *Richmond Medical Supply Co., Inc. v. Clifton, supra,* is a sound one, and we adopt it.

■■ Therefore, we hold that whether contract damages are direct or consequential is a question of law for the trial court. However, whether special circumstances exist to show that consequential damages were within the reasonable contemplation of the contracting parties is ordinarily a question of fact for the jury.

In this case, the parties agreed to have the judge resolve whether the fire loss was within the contemplation of the parties. The trial court expressed some amazement over this request because it thought the issue one for the jury.[5] The judge proceeded to make several factual findings in the final order of August 20, 1990, concerning what the parties were aware of at the time the fire sprinkler contract was signed, including the following:

> "Trushel, by contracting to install a sprinkler system in the new building with the knowledge that the purpose of the system was to contain fires, had to realize that if a fire occurred before the system was operable, a significant loss could occur. And, in fact, the evidence at trial was that the large and destructive fire which did occur would not have happened had Trushel performed its promise to have an operable sprinkler system in the new warehouse by February, 1987." [6]

---

4. We dealt with a similar situation in *Cummins Engines of W.Va., Inc. v. Park Corp.*, 170 W.Va. 704, 296 S.E.2d 345 (1982). There, the landlord was responsible under the terms of the lease for maintaining exterior and interior roof drains of the warehouse. A heavy rain occurred and, because of defects in the drains, water soaked the tenant's inventory. However, the damages were not an issue on the appeal, and they were not discussed. In an earlier case, *Evans v. Kirson*, 88 W.Va. 343, 106 S.E. 647 (1921), we recognized the landlord's breach of the lease where water pipes under his control damaged a tenant's property. Again, the measure of damage was not discussed.

5. The trial court's disbelief at the parties' decision is expressed in the August 20, 1990 final order: "Why this two million dollar issue was left to the Court to resolve can only be answered by counsel for Desco and Trushel. Clearly, the resolution of the issue requires the Court to determine factual issues which would have been determined by a jury."

6. The following language is also found in the August 20, 1990 order:
   > "In resolving the issue presented the Court accepts as correct plaintiff's claim that:
   > "1. During negotiations and at the time of the contract formation, Trushel knew the pur-

These findings, Desco argues, support its claim that the fire loss was within the contemplation of the parties. However, the court's conclusion was that the contract delay did not cause the fire, and Trushel could not reasonably have foreseen that a fire would occur during the delay period.[7] In addition to the trial court's findings, there are other considerations appearing in the record which support the conclusion that these special circumstances were not within the parties' contemplation when they entered into the contract.

First, there was no evidence to demonstrate that the risk of fire was substantially greater than in the ordinary manufacturing and storage business. Second, there is evidence to suggest that the fire was not accidental. Several witnesses concluded that the fire was of an incendiary origin, but were unable to state how it occurred or who had caused it. Trushel could not be reasonably expected at the outset of the contract to foresee these events.

■ Consequently, we conclude that the trial court's factual findings do not constitute reversible error under our traditional rule stated in Syllabus Point 2 of *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395 S.E.2d 535 (1990):

> " ' "The finding of a trial court upon the facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding." Syl. pt. 7, *Bluefield Supply Company v. Frankels [Frankel's] Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898 (1965).' Syl. pt. 1, *Burns v. Goff*, 164 W.Va. 301, 262 S.E.2d 772 (1980)."

## III.

■ Desco assigns two errors concerning the negligence claim that was submitted to the jury. The first error involves the validity of the court's instruction to the jury on assumption of the risk. The instruction was based on Desco moving its inventory into the new warehouse when it knew the sprinkler system was not operable. Desco makes two arguments against the instruction.

### A.

■ The first is a foreseeability argument. Desco claims that it was not foreseeable that a fire would occur when it moved the inventory into the warehouse. What Desco focuses on is the language contained in our doctrine of assumption of risk, which requires the plaintiff to have full knowledge and appreciation of the risk. Our traditional formulation is found in *Hollen v. Linger*, 151 W.Va. 255, 263, 151 S.E.2d 330, 335 (1966): "The doctrine of assumed or incurred risk is based upon the existence of a factual situation in which the act of the defendant alone creates the danger and causes the injury and the plaintiff voluntarily exposes himself to the danger with full knowledge and appreciation of its existence."

In this case, the dangerous condition or the risk assumed was the storage of flammable material in a warehouse with an inoperable fire sprinkler system. Desco was aware of the inoperable sprinkler system before it moved its inventory into the warehouse. It was also aware that a substantial portion of its inventory was flammable. The risk of damage by fire without

---

pose behind Desco's need for a warehouse expansion.

"2. Trushel was aware that plaintiff required the additional warehouse to accommodate the increased inventory resulting from plaintiff's productivity plans.

"3. Trushel was aware that the new warehouse would be utilized to store plaintiff's inventory.

"4. The specific purpose of the new sprinkler system was to minimize damage to Desco's property in the event of a fire.

"5. Trushel understood that Desco required fire protection for the protection of its building as well as the inventory and equipment to be stored in the new warehouse."

7. As the trial court stated in its final order: "Trushel had no reason to foresee that after February, 1987 plaintiff would suffer a destructive fire as a probable result of his breach of contract."

an operable sprinkler system was conceded by Desco at trial. These facts are sufficient to invoke the doctrine of assumption of risk.

In an analogous case, *Skarpness v. Port of Seattle*, 52 Wash.2d 490, 326 P.2d 747 (1958), the plaintiffs rented a shed from the Port of Seattle and stored fishing gear in it. The plaintiffs were aware that the building had no fire protection and that the doors were never locked. However, a night watchman, who was employed by the Port, inspected the various warehouses. A fire destroyed the plaintiff's equipment. At trial, the plaintiff prevailed, but the Washington Supreme Court reversed, holding that assumption of the risk applied as a matter of law:

> "The [plaintiffs] of their own free will, selected the frame shed which they knew to be devoid of the fire protection devices required by the ordinance. Indeed, the trial court found that the danger of the situation was apparent to both the plaintiffs and the defendant. The [plaintiffs] voluntarily assumed the liability." 52 Wash.2d at 494–95, 326 P.2d at 750.

■ With regard to foreseeability of an actual fire, Desco misperceives the nature of the risk. It is true, as Desco argues, that assumption of the risk is not available where the risk is only a remote possibility.

For example, in *Wright v. Valan*, 130 W.Va. 466, 43 S.E.2d 364 (1947), the plaintiff's car was burned when he parked it near a kettle which was used to heat asphalt. A fire ignited on the open spigot of the kettle and flaming asphalt flowed onto the plaintiff's car. The defendants claimed that the plaintiff had assumed the risk. However, the evidence showed that the plaintiff's car was parked outside of the area the defendants had roped off around the kettle. Moreover, the defendants maintained the kettle was safe, and consequently we held that the "plaintiff may not be held to have assumed or incurred the risk of a hazard which the defendants insist did not exist." 130 W.Va. at 478, 43 S.E.2d at 371.

Other cases illustrate that the precise cause of harm arising from the risk need not be anticipated by the parties. In *MacLachlan v. Lutz*, 249 Cal.App.2d 756, 57 Cal.Rptr. 833 (1967), the lessor of a building which had incurred extensive fire damage sued the lessees who operated a car undercoating business. The lessor knew that the undercoating material was highly flammable, but still refused the lessees' request that they be permitted to install a flame-proof booth in which to do the undercoating.

The lessors argued that the doctrine of assumption of the risk did not apply because the actual cause of the fire was the negligence of the lessees' employee. The lessors claimed that they could not have reasonably foreseen the employee's negligence, and, therefore, the defense of assumption of the risk was not available. The *MacLachlan* court rejected this argument:

> "Of course, ignition of the spraying compound is not directly attributable to absence of a proper spray booth. But the subject of this action, the 'risk' here involved, is the damage to lessors' building. In the inspector's expert opinion, that loss was caused by the absence of a spray booth." 249 Cal.App.2d at 759–60, 57 Cal.Rptr. at 836.

Just as the spray booth would have prevented the lessor's building damage in *MacLachlan*, so would have an operable sprinkler system saved Desco's building and inventory. The risk Desco assumed was substantial damage to its inventory because the building did not have a sprinkler system.

In *Golden 'B' Products, Inc. v. Clark Equipment Co.*, 58 Or.App. 555, 649 P.2d 813, *modified on other grounds*, 60 Or. App. 39, 652 P.2d 832 (1982), the plaintiff sought to avoid an assumption of risk defense by arguing it was not aware of the specific defect in the equipment that caused the fire. The plaintiff had been using an internal combustion engine in its warehouse, which contained dry hay and straw. The machine caused a fire, which destroyed the building. The plaintiff sued, claiming that the machine was defective. The defendant countered that the plaintiff had assumed the risk. The court concluded

that the plaintiff could still have assumed the risk even without knowledge of the actual defect as long as he was aware of the general risk of fire in operating the machine in such a combustible environment.

We conclude that the trial court was correct in giving an assumption of the risk instruction against Desco.[8]

### B.

■ Desco's second argument on the assumption of the risk issue is that the trial court failed to include language in its instruction that would require the jury to assess the reasonableness of Desco's conduct. Desco's objective was accomplished through the court's instructions that advised the jury to apportion the degree of relative fault between Desco and the defendants.

When we adopted the rule of comparative assumption of the risk in *King v. Kayak Manufacturing Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989), we declined to merge the doctrine of assumption of the risk with contributory negligence or to abolish it entirely. We did recognize that in a given case both defenses might be asserted and the jury so instructed. In note 17 of *King*, 182 W.Va. at 283, 387 S.E.2d at 518, we set out a proposed comparative assumption of the risk instruction, which was designed to inform the jury on how to compare the plaintiff's assumption of the risk against the defendant's primary negligence. Thus, in the second paragraph of that instruction, we used this language:

" 'In the event you should find the plaintiff guilty of fault which proximately contributed to his or her injuries, you should compare the plaintiff's fault to the combined negligence of the other parties to the accident and determine the degree of the plaintiff's fault expressed as a percentage of 100 percent....' "[9]

■ Here, the court incorporated this concept in its assumption of the risk instruction when it advised the jury "to take the combined fault which caused the damages to be 100% and then apportion the fault between the parties." Under this principle, DESCO was free to argue the reasonableness of its conduct with regard to its fault as compared to that of the defendants. We find no merit in this assignment of error.[10]

■ As we earlier pointed out, the court deemed that the defenses of contributory negligence and assumption of the risk were available against the plaintiff Desco. *See* note 1, *supra.* In a special interrogatory, the trial court asked the jury to divide Desco's total fault between assumption of the risk and contributory negligence. This interrogatory is unnecessary so long as Desco's fault equals 50 percent or more. A further breakdown may tend to confuse the jury, and we do not encourage it.

### IV.

For the foregoing reasons, the judgment of the Circuit Court of Hancock County is affirmed.

Affirmed.

---

**8.** Desco cites *Newark Insurance Co. v. Davis,* 139 F.Supp. 396 (S.D.W.Va.1956), as supporting its position. We disagree. In *Davis,* the court held that because the owner had no knowledge that a contractor who was working in his building was engaged in unsafe practices that could cause a fire, he was not barred from recovery by the doctrine of assumption of the risk.

**9.** At the end of the proposed instruction, we made this statement:

"In those cases where both comparative assumption of risk and contributory negligence are found to be jury questions, the phrase 'contributory negligence or assumption of risk' could be inserted in the first paragraph, and the phrase 'plaintiff's negligence or fault' used throughout the remaining portion of the

instruction." 182 W.Va. at 283 n. 17, 387 S.E.2d at 518 n. 17.

**10.** We decline to address in any detail Desco's other assignment of error that the trial court should have granted summary judgment for IRI on Fire Foe's third-party claim. This claim was based on IRI's requirement that Fire Foe submit its sprinkler system design for approval before installation. IRI also wanted to certify the system after it was installed. At trial, the court did direct a verdict for IRI. Desco argues that its insurance carrier, being a third-party defendant, prejudiced the jury. However, plaintiff's counsel disclosed the subrogation aspect in his opening statement. For this reason, we find no reversible error. *See Coffindaffer v. Coffindaffer,* 161 W.Va. 557, 244 S.E.2d 338 (1978).

WORKMAN, Justice, dissenting:

I respectfully dissent from the majority's opinion. The majority correctly sets out that "[o]ur rule for damages as a result of a breach of contract is that recovery may be obtained for those damages which either arise naturally from the breach or may reasonably have been within the contemplation of the parties at the time they made the contract." 186 W.Va. 434, 413 S.E.2d at 89. The trial court found that

> 'Trushel, by contracting to install a sprinkler system in the new building with the knowledge that the purpose of the system was to contain fire, *had to realize that if a fire occurred before the system was operable, a significant loss could occur.* And in fact, the evidence at trial was that the large and destructive fire which did occur would not have happened had Trushel performed its promise to have an operable sprinkler system in the new warehouse by February, 1987.'[1] (emphasis added)

*Id.* 186 W.Va. at ——, 413 S.E.2d at 91. The trial court then concluded, however, that " 'Trushel had no reason to foresee that after February, 1987 plaintiff would suffer a destructive fire as a probable result of his breach of contract.' " *Id.* 186 W.Va. at 437, 413 S.E.2d at 92 n. 7.

The trial court limited Desco's damages on its breach of contract action to the cost of completing installation of a sprinkler system and refused to award damages to Desco which occurred when its new warehouse and inventory were destroyed by a fire.

Although the trial court enunciated both of the standards set forth in the majority opinion in his opinion order, it seems obvious from the trial court's reasoning therein that the trial court mistakenly believed that damages for breach of contract were limited to those arising naturally from the breach. The majority does not attempt to reconcile the trial court's inconsistent findings, but upholds its conclusions on the theory that damages to the warehouse and inventory were not consequential because

at the time of formation of the contract, these damages "could [not] reasonably have [been] anticipated" as being "a probable result of a breach [of the contract]." *Id.* at Syl. Pt. 2. Interestingly, however, the majority reaches this result by relying primarily on cases upholding Desco's position. *See Lewis v. Welch Wholesale Flour & Feed Co.*, 96 W.Va. 694, 123 S.E. 801 (1924) (Court permitted lessee denied of occupancy of leased premises to recover special damages including rent for storage of goods and damages to stored goods due to dampness in storage area); *see also Emery v. Caledonia Sand & Gravel Co., Inc.*, 117 N.H. 441, 374 A.2d 929 (1977); *Olson v. Quality–Pak Co.*, 93 Idaho 607, 469 P.2d 45 (1970); *Olson Plumbing & Heating, Inc. v. Douglas Jardine, Inc.*, 626 P.2d 750 (Colo.App.1981); *A. Brown, Inc. v. Vermont Justice Corp.*, 148 Vt. 192, 531 A.2d 899 (1987).

Quite simply stated, in order to recover consequential damages, "special circumstances [must] exist to show that consequential damages were within the reasonable contemplation of the contracting parties." 186 W.Va. at 436, 413 S.E.2d at 91; *see Richmond Medical Supply Co., Inc. v. Clifton*, 235 Va. 584, 586–87, 369 S.E.2d 407, 409 (1988). The evidence in this case indicates that Desco contracted to have the sprinkler system installed in order to prevent fire and consequent damages. When Trushel failed in its contractual duty to install and make operational the sprinkler system, Desco even instituted a 24–hour fire watch, which required the warehouse supervisor to check the building every few hours. Although the existence of special circumstances to show that consequential damages were within the reasonable contemplation of the contracting parties is ordinarily a question of fact for the jury, and although the trial court in this case by agreement of the parties acted as the factfinder, still it seems clear as a matter of law that Desco and Trushel could reasonably have anticipated that damages would result from a fire. Why else would a com-

1. This as well as additional findings of fact of the trial court included in the majority opinion

*supra* at footnote 6 support the conclusion of this dissent.

pany install a sprinkler system and hire a guard? The answer is obvious. The whole reason behind installing a fire sprinkler system is in anticipation or contemplation of a fire and in order to prevent consequent damages. It is without comprehension that the majority could conclude that such damages were not contemplated by the parties when the contract was formed.

Based upon the foregoing reasons, I dissent.